**INDIANA FAMILY AND SOCIAL SERVICES ADMINISTRATION, Appellant–Respondent,**

**v.**

**Drusilla JONES, Appellee–Petitioner.**

**No. 35A02–9707–CV–465.**

Court of Appeals of Indiana.

March 10, 1998.

Jeffrey A. Modisett, Attorney General, Jon Laramore, Deputy Attorney General, Indianapolis, for Appellant–Respondent.

John W. Bailey, Matheny, Michael, Hahn & Bailey, L.L.P., Huntington, for Appellee–Petitioner.

**OPINION**

SULLIVAN, Judge.

Appellant, Indiana Family and Social Services Administration (IFSSA), appeals the trial court's determination remanding the cause to the IFSSA for a new hearing with respect to the revocation of Drusilla Jones' (Jones) child care license.

We affirm.

IFSSA presents two issues for review,[1] which we restate as follows:

---

**1.** We note that IFSSA's statement of the issues contains only one issue. However, IFSSA makes

1) Whether the trial court erred in concluding that due process entitled Jones to challenge the substantiated finding of abuse or neglect during her child care license revocation hearing.

2) Whether the trial court erred in requiring that the agency utilize the procedure found in I.C. 31–6–11–12.3 upon remand.

Jones operated a licensed child care home until December 15, 1995 when the .IFSSA notified her that her child care license was revoked effective immediately. One of the children in Jones' care was reported to have been abused. Subsequently, allegations of abuse were "substantiated" by a social worker, Judy Couch.[2] During her investigation of several incidents, Couch spoke with the child who made the allegations, his mother, Jones and Jones' husband.

Although Couch testified during the administrative hearing before an Administrative Law Judge (ALJ) and Jones testified on her own behalf, the ALJ determined that Jones was not permitted to challenge the "substantiation" of abuse at the administrative hearing, pursuant to 470 IAC 3–1.1–35(b). The rule provides:

"A substantiated case of abuse or neglect in a day care home constitutes full and sufficient grounds for denial or revocation of the day care home license."

In addition, the ALJ further would not admit exhibit D, which contained letters in Jones' favor. The ALJ determined that they were not relevant to the issue at hand. The ALJ concluded:

"8. That based on the foregoing Findings of Fact, this revocation of the appellant's child care home license is found to have been correct for the reason there was a substantiated case of abuse at the appellant's day care home.

9. That an individual who wishes to challenge the results of an abuse or neglect investigation may do so through a judicial proceeding; not in the context of an administrative proceeding concerning the agency's issuance of a license." Record at 154.

Jones appealed the determination to the IFSSA, which affirmed the ALJ's decision. Jones then sought review of the decision of the IFSSA in the Huntington Circuit Court. On March 24, 1997, the court concluded that Jones should have been permitted to challenge the "substantiated" finding of abuse or neglect at the license revocation hearing. The court noted that the caseworker who "substantiates" the allegation of neglect or abuse makes "judgments about the credibility of the persons involved .... without [affording the respondent] the opportunity for cross examination or confrontation." Record at 231.

The IFSSA asserts that Indiana already provides a forum for challenging the "substantiation" of abuse or neglect, and due process does not dictate that Jones be entitled to challenge the "substantiation" at her license revocation hearing. As IFSSA contends, the heart of this case is "whether the scope of the administrative proceeding—the agency's exclusion of the correctness of the substantiation—was consistent with due process." Appellant's Br. at 6. The IFSSA, nevertheless, spends appreciable space describing alternative methods that Jones had or has available by which to attack the "substantiation" of abuse or neglect. However, we first turn to whether Jones was entitled to due process and what process is "due."[3]

---

an additional argument in its brief, which we have listed as a second issue.

**2.** " 'Substantiated' for purposes of IC 31–33, IC 31–34–8–4, and IC 31–37–9–5, means a determination regarding the status of a report made under IC 31–33 whenever facts obtained during an investigation of the report provide credible evidence that child abuse or neglect has occurred." I.C. 31–9–2–123 (Burns Code Ed. Repl. 1997).

In legal parlance, however, the word "substantiate" imports a more rigorous test. It is defined as "to *establish* the existence or truth of, by true or competent evidence, or to verify." BLACK's

LAW DICTIONARY 1429 (6th ed. 1990). (Emphasis supplied). Common usage carries with it a similar connotation, i.e. "to establish by proof or competent evidence." WEBSTER's NEW COLLEGIATE DICTIONARY 1161 (1977 ed.).

**3.** In a companion case, *Topper v. Indiana Family and Social Servs. Admin.* (1998) Ind.App., 690 N.E.2d 794, decided today, the IFSSA argued that there is no property interest in the day care home license. Although the IFSSA here simply states that Jones has no property right with respect to the license, the IFSSA fails to make an argument supporting that assertion. Although a failure to make the argument would ordinarily

## DUE PROCESS

■ Pursuant to the Due Process Clause of the Fourteenth Amendment of the United States Constitution, no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. In order to establish a violation of due process, one must demonstrate that she was deprived of a liberty or property interest. *Wilhoite v. Melvin Simon & Assoc.* (1994) Ind.App., 640 N.E.2d 382, 385.

■ IFSSA contends that, because the agency has discretion in whether or not to issue a license in the first instance, no property interest exists with regard to it. Whether one has a property interest in a license depends upon whether the individual has a legitimate claim of entitlement to it, which, in turn, is often dictated by "the amount of discretion given to the state licensing authorities." *Kellogg v. City of Gary* (1990) Ind., 562 N.E.2d 685, 694. *Kellogg* referred to *Matthews v. State,* (1958) 237 Ind. 677, 148 N.E.2d 334, as an example. In *Matthews,* the statute required the licensing authority to assess whether the applicant for a firearms license was of good character and reputation and if the applicant was a suitable person. If the applicant met these "qualifications", the licensing authority was required to issue a license. *Id.,* 148 N.E.2d at 337. Although it appears that the licensing authority had wide discretion in assessing the applicant's character, once that assessment was made, as the *Kellogg* court pointed out, the agency had no "discretion" in issuing a license. In such instance, the holder had a "legitimate claim of entitlement" and therefore a property interest in the license.

I.C. 12–17.2–5–7 reads:

"The division shall issue a license to a person who meets all of the license requirements when an investigation shows the applicant to be in compliance with this article." (Burns Code Ed. Repl.1997)

In the companion *Topper* case, *supra,* the IFSSA makes the seemingly paradoxical statement that:

"Although the division is required to issue a license to a person who meets all of the provisions of the statute, there is considerable discretion in the decision of the division to issue the license." Appellee's Br. at 7 in *Topper, supra.*

IFSSA seems to be asserting that, although the division must issue a license if an applicant fulfills all of the requirements, the division has wide discretion in determining whether those requirements have been met. Whether qualifying requirements were met with respect to the original license issuance is of no moment here.

We note, however, that the license issuance statute involved is almost wholly objective, leaving very little discretion to the issuing agency. I.C. 12–17.2–5–7 reads:

"The division shall issue a license to a person who meets all of the license requirements when an investigation shows the applicant to be in compliance with this article." (Burns Code Ed. Repl.1997)

A careful reading of the statutory provisions reveals that the qualifications which the applicant must demonstrate are not the subjective type of qualifications which would indicate discretion on the part of the licensing authority. As IFSSA points out in *Topper,* the license may be denied because of a finding of abuse or neglect, a felony criminal conviction, a misdemeanor conviction related to the health and safety of a child, and false statements made on applications or records.[4] I.C. 12–17.2–5–4 (Burns Code Ed. Repl.1997). It is true that the statute requires an investigation in order to determine whether an applicant is in compliance with the statutory provisions, but that investigation is simply an objective appraisal of whether the qualifications have been met. I.C. 12–17.2–5–6 (Burns Code Ed. Repl.1997). It appears that there is little or no discretion of any stage of the licensing procedure; therefore, we conclude, in keeping with *Kellogg* and *Matthews,* that Jones had a property interest in the license issued to her.

---

result in waiver, we nevertheless address this contention.

4. There are other requirements relating to such things as building safety, fire prevention and

water testing, but again, nothing of the sort which would allow IFSSA subjective discretion in denying an applicant's license.

Jones, having a property interest in her license, may not be deprived of that license without due process of law. *See McKinney v. George* (1984) 7th Cir., 726 F.2d 1183, 1189. (If a state confers a benefit, although not required to do so, e.g., parole of a prisoner, it may not revoke that benefit without due process). At her revocation hearing, the ALJ determined that Jones was not permitted to contravene the findings of the abuse or neglect investigation and that she might only challenge that substantiation through a judicial proceeding.

What Jones contends, and the IFSSA does not attempt to rebut, is that the administrative hearing afforded Jones fell short of providing her with due process. The administrative agency must provide Jones with due process which includes an opportunity to be heard. *See Fruehauf Corp. v. Review Bd. of Ind. Employment* (1983) Ind.App., 448 N.E.2d 1193, 1196. Further, Jones must be afforded the right to confront witnesses. *Carter v. Review Bd. of Ind. Dep't of Employment* (1988) Ind.App., 526 N.E.2d 717, 718, *trans. denied.* Although Jones was able to testify and cross-examine the witnesses, such exercise was meaningless. The ALJ essentially ignored any evidence which tended to show that the allegations of abuse had not occurred. Jones, in essence, was not provided with an evidentiary hearing to determine whether her license should be revoked. A hearing upon a license revocation is meaningless unless the respondent is permitted to challenge the underlying allegations of abuse.[5]

The essence of the IFSSA's brief is that our state legislature has provided Jones with a method of challenging the "substantiation" of child abuse consistent with due process. The IFSSA turns our attention to I.C. 31-6-11-5(c), which states:

"Child abuse or neglect information may be expunged under I.C. 31-6-8-2 if the

probative value is so doubtful as to outweigh its validity. Child abuse or neglect information shall be expunged if it is determined to be unfounded after:

(1) An investigation of a report of a child who may be a victim of child abuse or neglect by the child protective service; or

(2) A court proceeding." (Burns Code Ed. Repl.1987).[6]

I.C. 31-6-8-2 allows a party to petition a juvenile court to remove records pertaining to the petitioning party from its files, the files of law enforcement agencies, and the files of any other entity that has provided services to a child under a court order. I.C. 31-6-8-2(b) (Burns Code Ed. Repl.1987).

The IFSSA argues that this procedure is entirely consistent with due process. In fact, it argues, I.C. 31-6-11-5(b)(2) allows for the determination of expungement to be made after a judicial proceeding, thereby providing Jones with more "process" than an administrative hearing. The review court determined that Jones had no recourse to challenge the "substantiation" of abuse. *Dubois County Office of Family and Children v. Adams* (1996) Ind.App., 671 N.E.2d 202. In *Adams*, this court determined that I.C. 31-6-8-2 gives the "juvenile court jurisdiction to order the expungement of records relating to the person's involvement in juvenile court proceedings." *Id.* at 203. In that case, the petitioner had not been involved in a juvenile court proceeding; therefore, the statute was inapplicable.

The IFSSA submits that *Adams* is not controlling here because we deal with I.C. 31-6-11-5. We disagree. Although we are concerned with a different statute than was the court in *Adams*, I.C. 31-6-11-5 allows expungement of records "under I.C. 31-6-8-2." [7] The only expungement enumerated by either statute is with respect to records of the juvenile court. Insofar as the record

---

5. We do not hold that a hearing is necessary before *any* suspension of the license. Obviously, the IFSSA has a paramount interest in the safety of children and situations may exist in which the IFSSA may deem it necessary to suspend a party's license in an emergency situation. However, a hearing upon the actual revocation of the license must be held in accordance with the protections of due process.

6. As do both parties, we cite to the former statute in effect at the time at issue in this case.

7. I.C. 31-6-8-2 indicates that it is applicable only to "records created as a result of allegations that a child is a delinquent child or a child in need of services." (Burns Code Ed. Repl.1987). I.C. 31-6-11-5 seemingly expands the applicability of the former section to any child abuse or neglect information.

before us shows, the juvenile court was not in any way involved in the dispute here.

Further, even if Jones could avail herself of the expungement process, it would inadequately protect her interest in her license. At the revocation hearing, Jones must be able to challenge evidence which would otherwise support a finding of abuse or neglect. If her license has been revoked, the expungement statute does not address its reinstatement. It is of no consequence that Jones may subsequently "expunge" records. The expungement statute is contained within the juvenile code; it is not a child care licensing statute. Jones was entitled to the protections of due process against state action depriving her of her property interest.

### PROVISIONS OF THE REMAND ORDER

■ The IFSSA notes that the trial court, in remanding the cause, ordered that the agency must "us[e] the procedure found in I.C. 31–6–11–12.3." [8] Record at 232. The IFSSA complains that the trial court may not dictate the procedure to be utilized upon remand. *See Indiana Alcoholic Beverage Comm'n v. Edwards* (1995) Ind.App., 659 N.E.2d 631. We agree. The review court's authority in this respect is limited to a remand for further proceedings. I.C. 4–21.5–5–14. The court may not specify that a particular procedure be utilized. The agency, upon remand, must, however, proceed in accordance with applicable law.

The decision of the review court in reversing the decision of the IFSSA is hereby affirmed. This cause is remanded to the IFSSA for a full and fair hearing upon the merits of Jones' license revocation, in accordance with applicable law and not inconsistent with this opinion.

FRIEDLANDER and KIRSCH, JJ., concur.

---

**8.** *See* (Burns Code Ed. Supp.1996). The provision called for an administrative hearing at which the agency "must prove by some credible evidence that the alleged perpetrator is responsible for the child's abuse or neglect." Although the administrative hearing officer could consider hearsay, the determination could not be based solely upon hearsay.