Randy J. ROSS, R.N., Appellant–
Plaintiff,

v.

INDIANA STATE BOARD OF NURS-
ING, Kay Engelbrecht, R.N., in her
individual capacity, Hilda Glass,
L.P.N., in her individual capacity, Kay
Leach, R.N., in her individual capaci-
ty, Juanita Richards, L.P.N., in her
individual capacity, Marya Rose, in
her individual capacity, Marsha King,
R.N., in her individual capacity, and
the Health Professions Bureau, Appel-
lees–Defendants.

No. 49A05–0206–CV–293.

Court of Appeals of Indiana.

June 13, 2003.

Kevin W. Betz, Mark J. Pizur, Betz & Associates, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Frances Barrow, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

ROBB, Judge.

The State of Indiana filed a complaint before the Indiana State Board of Nursing alleging that Randy Ross, R.N. was unfit to practice due to a mental disability and seeking disciplinary sanctions against him. In connection with the Board's investigation of the State's complaint, the Board ordered Ross to submit to and pay for a psychiatric evaluation. Ross filed a motion to reconsider the order imposing the costs of the examination on him, which the Board denied. Ross then instituted an action in Marion County Court seeking review of the Board's decision. On summary judgment, the trial court found for Ross, but denied his request for attorney's fees. Ross appeals the denial of his attorney's fees request; the Board cross-appeals the merits of the trial court's decision. We affirm in part and reverse and remand in part.

### Issues

Ross raises one issue for our review, which we restate as whether the trial court

properly determined that immunity precludes the assessment of attorney's fees against the Board.

In addition, the Board raises one issue on cross-appeal, which we restate as whether the trial court properly granted summary judgment to Ross on finding that the Board's imposition of costs against Ross prior to a determination of professional misconduct was a violation of Ross' constitutional rights.

### Facts and Procedural History

Ross gained his nursing license in June of 1996. He worked as a nurse on probationary status at St. Vincent Hospital from September 1996 through February 1997, after which time the Hospital declined to extend his employment.

In February 1998, the State filed a complaint before the Board alleging that Ross was unfit to practice due to a mental disability. Among the allegations were that while employed at St. Vincent, he had mislabeled laboratory specimens as belonging to the wrong patients; failed to administer medications on a timely basis and falsified reports thereafter; and removed a chest tube from a patient despite not being qualified or authorized to do so. Ross allegedly told his supervisors that he might not have made the errors had he not unilaterally decided to reduce or discontinue use of prescribed medications. The State sought imposition of disciplinary sanctions and payment of all costs.

In connection with its complaint, the State filed a motion seeking an order compelling Ross to submit to a psychiatric examination at his own expense. The Board granted the motion. Ross filed a motion to reconsider the order, contending that there was no statutory authority for the assessment of costs against him and to do so was a violation of due process.[1] Following a hearing, the Board denied Ross' motion to reconsider, and subsequently issued a written order which states, in pertinent part, as follows:

The Health Professions Standards of Practice Act ("Act") provides that a board "may order a practitioner to submit to a reasonable ... mental examination if the practitioner's ... mental capacity to practice safely is at issue in a disciplinary proceeding." Ind.Code § 25-1-9-7. The parties do not dispute the appropriateness of the exam itself but rather whether the state or [Ross] shall make the initial payment for the exam.

The Act does not address the question of who shall make the initial payment. But the statute does provide that if the State prevails in this matter, the cost of an exam may be assessed against the practitioner at the discretion of the Board. Ind.Code § 25-1-9-15(7). At the hearing on the Motion to Reconsider, [Ross'] counsel did not claim that his client was indigent when the question was put to him directly by the Board. In addition, the matter before the Board involves the question of whether a licensed professional may safely practice nursing. The ability to practice nursing is a privilege and not a fundamental right. It is therefore not a denial of due process for the practitioner to make the initial payment for his psychological exam.

---

1. Part of the motion to reconsider concerned the fact that Ross was ordered to submit to a psychiatric examination by a particular doctor. However, when he attempted to schedule an appointment, Ross was informed that the doctor was not accepting new patients. This issue was resolved by Ross and the Board and Ross did in fact submit to an examination by another doctor.

Appellant's Appendix at tab 9, page 2.[2]

Ross subsequently filed a "Petition for Review of Administrative Ruling and Complaint for Injunctive Relief pursuant to § 1983" in Marion Superior Court, alleging that the Board's policy of imposing costs of a State-requested and Board-ordered psychiatric examination prior to a final determination is a denial of due process.[3] Ross filed a motion for summary judgment, which, according to the trial court's order, concerned:

> whether the Board violated [Ross'] rights, liberties and immunities secured and guaranteed him under the due process clause of the Fourteenth Amendment to the Constitution of the United States of America and the laws of the State of Indiana when it imposed the costs of a State-requested medical examination pursuant to the State's investigation of [Ross] prior to the Board's determination of professional misconduct.

Appellant's Appendix at tab 11, page 2.[4] Following a hearing, the trial court issued an order granting Ross' motion for summary judgment. The order reads, in pertinent part, as follows:

> Mr. Ross, a licensed registered nurse, initiated this action against the Board pursuant to 42 U.S.C. § 1983 seeking redress of the Board's deprivation of his rights, liberties and immunities secured and guaranteed him under the Constitution and Laws of the United States of America. Specifically, the Board, acting under the color of state law, promulgated a rule imposing upon Mr. Ross the cost of a State-requested and Board-ordered psychiatric examination prior to any determination of professional misconduct.
>
> * * *
>
> The Court hereby FINDS and CONCLUDES that:
>
> (1) Mr. Ross has a recognized property interest in his duly issued nursing license and may only be deprived of that license through due process of law;
>
> (2) The Board's imposition of the costs of the State's investigation prior to any determination of professional misconduct were a violation of Mr. Ross's federal constitutional due process rights and the laws of the State of Indiana;
>
> (3) Pursuant to federal due process protections constitutionally guaranteed Mr. Ross and the Indiana Rules of Trial Procedure, the

---

2. Ross chose to place numbered tabs in his Appendix as dividers between sections. The individual pages of the Appendix are not numbered sequentially. Thus, we refer to each section by its tab number. However, we note that Indiana Rule of Appellate Procedure 51(C) requires that appendices be "numbered at the bottom consecutively." We also note that Ross did not include within his Appendix a copy of the Chronological Case Summary as required by Appellate Rule 50(A)(2)(a).

3. Prior to the filing of Ross' complaint, the Board held a final hearing and determined that Ross' license would be placed on indefinite probation. Ross was not permitted to petition for modification or termination of the probation for at least two years. During the probation period, he was required to comply with several Board-ordered terms. Ross' complaint alleged that the Bureau's final written order on the Board's determination was not issued within sixty days of the final hearing as required by statute and that the Board's decision was arbitrary and capricious and the punishment unreasonable. Appellant's Appendix at tab 1, page 3. These issues are not before us.

4. Neither party has favored us with a copy of the actual motion for summary judgment in the appendices. In addition, the Board apparently filed a cross-motion for summary judgment. This motion was not provided to us either.

State must bear the costs associated with its investigation of Mr. Ross' psychiatric status prior to a determination of professional misconduct by the Board;

(4) The Indiana General Assembly did not vest the Board with the authority to impose costs of the State's investigation of Mr. Ross prior to any determination of professional misconduct. The Health Professions Standards of Practice Act, Ind.Code § 25–1–9–1 *et seq.*, does not vest the Board with the authority to impose the costs of a State-requested medical examination upon a licensed practitioner prior to any determination of professional misconduct. Ind.Code §§ 25–1–9–7 and 25–1–9–15, which were cited by the Board in support of its premature imposition of the costs associated with the State-requested medical examination upon Mr. Ross, are completely devoid and silent as to any language that vests the Board with the authority to impose costs on Mr. Ross for such a psychiatric examination prior to any determination of professional misconduct. This cost must at least preliminarily be borne by the Board, and may be imposed upon Mr. Ross only after sanctions, if any are imposed upon Mr. Ross for professional misconduct. Once a determination of professional misconduct is made, if it is made, then the Board may impose such costs on Mr. Ross; and

(5) As to attorney fees, this Court concluded that no attorney fees may be awarded to Mr. Ross because the Board acted in a quasi-judicial capacity and is therefore immune.

Appellant's Appendix at tab 11, pages 2–3. Ross has appealed the trial court's order regarding attorney's fees and the Board has cross-appealed regarding the merits of the trial court's decision that it cannot assess costs against the practitioner prior to a final determination.

### Discussion and Decision

### I. Summary Judgment

Our standard of review of a summary judgment order is well-settled: summary judgment is appropriate if the "designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Ind. Trial Rule 56(C). Relying on specifically designated evidence, the moving party bears the burden of making a prima facie showing that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *I/N Tek v. Hitachi Ltd.*, 734 N.E.2d 584, 586 (Ind. Ct.App.2000), *trans. denied.* If the moving party meets these two requirements, the burden shifts to the nonmovant to set forth specifically designated facts showing that there is a genuine issue for trial. *Id.* A genuine issue of material fact exists where facts concerning an issue which would dispose of the litigation are in dispute or where the undisputed material facts are capable of supporting conflicting inferences on such an issue. *Gilman v. Hohman*, 725 N.E.2d 425, 428 (Ind.Ct.App. 2000), *trans. denied.* Even if the facts are undisputed, summary judgment is inappropriate where the record reveals an incorrect application of the law to the facts. *Id.*

On appeal, we are bound by the same standard as the trial court, and we consider only those matters which were designated at the summary judgment stage. *Interstate Cold Storage v. General Motors*

*Corp.,* 720 N.E.2d 727, 730 (Ind.Ct.App. 1999), *trans. denied.* We do not reweigh the evidence, but we liberally construe all designated evidentiary material in the light most favorable to the nonmoving party to determine whether there is a genuine issue of material fact for trial. *Estate of Hofgesang v. Hansford,* 714 N.E.2d 1213, 1216 (Ind.Ct.App.1999). The party that lost in the trial court has the burden to persuade the appellate court that the trial court erred. *Id.* Specific findings and conclusions by the trial court are not required, and although they offer valuable insight into the rationale for the judgment and facilitate our review, we are not limited to reviewing the trial court's reasons for granting or denying summary judgment. *Bernstein v. Glavin,* 725 N.E.2d 455, 458 (Ind.Ct.App.2000), *trans. denied.* A grant of summary judgment may be affirmed upon any theory supported by the designated materials. *Id.* In addition, where, as here, the parties filed cross-motions for summary judgment, our standard of review is not altered. *Circuit City Stores, Inc. v. American Nat'l Ins. Co.,* 779 N.E.2d 62, 66 (Ind.Ct.App.2002). We consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Id.*

## II. The Board's Issue: Imposition of Costs Pre–Determination[5]

For ease of discussion, we will address first the Board's issue, as it goes to the merits of the trial court's decision. If we find for the Board on its cross-appeal, Ross' issue regarding attorney's fees is moot.

The Board contends that the trial court erred in granting summary judgment to Ross on finding that the Board's policy of imposing the costs of investigation upon the practitioner prior to a final determination is unconstitutional. The Board asserts first that the Board and the Health Professions Bureau are not "persons" within the meaning of section 1983, leaving only the individual members of the Board amenable to suit and section 1988 was not intended to award attorney's fees against individuals. The Board also asserts that the trial court erred on the merits of its decision.

### A. Definition of "Person"

We note first that Ross' complaint names the Indiana State Board of Nursing, the Health Professions Bureau, and six members of the Board of Nursing in their individual capacities. Appellant's Appendix at tab 1, page 1. The trial court's order refers to all parties collectively as the "Board" and enjoins the Board from "enforcing its unlawful and unconstitutional policy of imposing the costs associated with ... investigation of a licensed practitioner's psychiatric status prior to a final determination as to sanctions" but does not assess costs against the Board "because of statutory prohibitions against assessing such costs against the State." Appellant's Appendix at tab 11, page 3.

Section 1983 provides:

Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the

---

5. Ross contends that "[a]ll of the Board's arguments in their Cross–Appeal requesting this Court to reverse the Trial Court's order on the merits were never presented below" and are therefore waived. Brief of Appellant at 24. However, because neither party has favored us with copies of the motions for summary judgment or briefs in support thereof, we cannot independently determine what issues were presented to the trial court and we therefore decline to decide the Board's issue on the basis of waiver.

jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983 (emphasis added). Thus, it is first necessary to determine whether a particular defendant is a "person" within the meaning of the statute and thus, amenable to suit.

■■■ There are three factors to be considered in determining whether a particular entity is a "person" for section 1983 purposes. First is the type of governmental entity being sued. Second is whether the plaintiff seeks retrospective (monetary) or prospective (injunctive) relief. Finally, if the suit is against a state official, whether the suit is brought in an official or individual capacity. *Severson v. Board of Trustees of Purdue Univ.*, 777 N.E.2d 1181, 1188–89 (Ind.Ct.App.2002), *trans. denied.* Using these factors, five general rules have emerged regarding whether an entity is a "person" within the meaning of section 1983: 1) a municipality, municipal official, or other local governmental unit or political subdivision may be sued for retrospective or prospective relief; 2) a state or state agency may not be sued under section 1983 regardless of the type of relief requested; 3) a state official cannot be sued in his official capacity for retrospective relief but can be sued for prospective relief; 4) a state official can be sued in his individual capacity for retrospective relief; and 5) an entity with Eleventh Amendment immunity in federal court is not considered a section 1983 "person" in state court. *Id.* at 1190.

### 1. The Board and the Bureau

■■■ The Board contends that it and the Bureau are state agencies which cannot be sued for any kind of relief under section 1983. The question whether a particular state agency has the same kind of independent status as a county or is instead an arm of the State within the meaning of the Eleventh Amendment is a question of federal law requiring consideration of the provisions of state law defining the agency's character. *Id.* at 1192.

There can be little doubt, and in fact Ross does not dispute, that the Board and the Bureau are state agencies. The Board and Bureau are both created by statute. *See* Ind.Code §§ 25-1-5 and 25-23-1. The executive director of the Bureau and the eight members of the Board are appointed by the governor. *See* Ind.Code § 25-1-5-5(a) ("The bureau shall be administered by an executive director appointed by the governor who shall serve at the will and pleasure of the governor."); Ind.Code § 25-23-1-2(a) ("There is established the Indiana state board of nursing consisting of eight (8) members appointed by the governor, each to serve a term of three (3) years subject to death, resignation, or removal by the governor."). The Bureau performs all administrative functions, duties and responsibilities for the Board. Ind.Code § 25-1-5-3(a). As state agencies, the Board and the Bureau are not "persons" amenable to a suit seeking any type of relief under section 1983. *See Severson*, 777 N.E.2d at 1190.

### 2. The Board Members

The Board also contends that Ross sued its members in their individual capacities alone and although its individual members are amenable to suit, section 1988 does not contemplate assessment of fees against individuals. Ross concedes that the caption of his complaint names the Board members in their individual capacities, but counters that the substance of his complaint alleges a cause of action against them in their official capacities as well.

One indicia of the capacity in which a government agent has been sued under section 1983 is the language of the caption of the case. *Lake County Juvenile Court v. Swanson*, 671 N.E.2d 429, 434 (Ind.Ct.App.1996), *trans. denied*. Another indicia is the allegations and language used in the body of the complaint. *Id.* If a plaintiff seeks to sue public officials in their personal capacities or in both their personal and official capacities, the plaintiff should expressly state so in the complaint. *Id.* We also note that courts ordinarily assume that an official is sued only in her official capacity when a plaintiff alleges that a state official acted under the color of state law giving rise to liability under section 1983. *Id.*

Reviewing Ross' complaint, we hold that although he named the members of the Board in their individual capacities in the caption, he nonetheless adequately alleged a cause of action against the members of the Board in their official capacities. Other than naming each Board member and his or her county of residence, the substance of the complaint never mentions any conduct by the individual members of the Board. Rather, each and every allegation is against the Board as a whole. For instance, Ross alleges that "[t]he Board's decision imposing the costs of the State-requested Board-ordered psychiatric evaluation upon Mr. Ross is in direct contravention of Mr. Ross' constitutionally protected procedural due process rights." Appellant's Appendix at tab 1, page 9. He also alleges that "[a]t all times relevant herein, the [Board, Board members and the Bureau] were acting under the color of state law." *Id.* at tab 1, page 15. Finally, he seeks:

> the Court to declare certain established policies and practices employed by the Board as arbitrary, capricious, an abuse of discretion, and otherwise not in ac-

cordance with the law; contrary to constitutional right, power, privilege and immunity; in excess of statutory jurisdiction, authority or limitation, or short of statutory right; without observance of the procedure required by law; and a denial of due process. Further, Mr. Ross requests this Court to enjoin further practice of the Board's policy of imposing costs of a State-requested Board-ordered psychiatric examination upon the investigated practitioner prior to a final determination of professional misconduct. . . .

*Id.* at tab 1, page 4. Ross' allegations concern policies and actions of the Board as a body, rather than any one Board member as an individual. Thus, we hold that Ross' complaint adequately states a claim against the Board members in their official capacities, and Ross may accordingly seek prospective relief against these "persons" in a section 1983 action. *See Severson*, 777 N.E.2d at 1190.

### B. Merits of Trial Court's Decision

### 1. Allocation of Financial Responsibility for Examination

The Board also contends that the trial court erred on the merits of its decision. It asserts that it had the statutory authority to assess the cost of the examination against Ross. Indiana Code section 25–1–9–7 provides: "The board may order a practitioner to submit to a reasonable physical or mental examination if the practitioner's physical or mental capacity to practice safely is at issue in a disciplinary proceeding." The Board contends that because the legislature empowered the Board to order an examination to obtain evidence regarding the practitioner's mental capability, and because a license is a privilege rather than a right, it is reasonable to conclude that the legislature intended for the practitioner to assume the

cost of demonstrating his fitness to engage in the practice of nursing by paying the cost of the examination even prior to a disciplinary determination. Ross counters that the State bears the burden in the proceeding before the Board to prove its case and should bear all costs attendant thereto.

 Our courts have not yet had occasion to consider the meaning of Indiana Code section 25–1–9–7. Where a statute has not previously been construed, our interpretation is controlled by the express language of the statute and the rules of statutory construction. *Crowe, Chizek, and Co., L.L.P. v. Oil Technology, Inc.,* 771 N.E.2d 1203, 1206 (Ind.Ct.App.2002), *trans. denied.* We engage in statutory construction only if the statutory language is ambiguous, or susceptible to more than one interpretation. *Foster v. Evergreen Healthcare, Inc.,* 716 N.E.2d 19, 25 (Ind. Ct.App.1999), *trans. denied.* When construing a statute, our function is to determine and give effect to the legislative intent in enacting the provision. *Risner v. Indiana Parole Board,* 779 N.E.2d 49, 51 (Ind.Ct.App.2002). The legislature is presumed to have intended the language used in the statute to be applied logically and not to bring about an unjust or absurd result. *Indiana Ins. Guar. Ass'n v. Blickensderfer,* 778 N.E.2d 439, 442 (Ind.Ct. App.2002). We keep in mind the purposes of the statute as well as the effect and repercussions of the interpretation. *Koppin v. Strode,* 761 N.E.2d 455, 461 (Ind.Ct. App.2002), *trans. denied.* We will adopt an interpretation that renders the statute constitutional and fully implements its provisions. *Lincoln v. Board of Comm'rs of Tippecanoe County,* 510 N.E.2d 716, 724 (Ind.Ct.App.1987). An important rule of statutory construction is that it is just as important to recognize what a statute does say as to recognize what it does not say.

*Schafer v. Sellersburg Town Council,* 714 N.E.2d 212, 215 (Ind.Ct.App.1999), *trans. denied.*

 In this case, the statute is silent as to who shall bear the initial burden of the expense of a Board-ordered mental examination. Nonetheless, the Board has always ordered the practitioner being investigated to pay for the examination. *See* Appellant's Appendix at tab 10, page 2 (the then-director of the Board stating in an affidavit that it is her understanding "that the Board has always required the nurse to pay for the expenses associated with such examinations."). "[A]n agency's interpretation of the statutes and regulations which the agency is charged to enforce is entitled to some weight [but] if an agency's interpretation is erroneous, it is entitled to no weight." *Aguilera v. City of East Chicago Fire Civil Serv. Comm'n,* 768 N.E.2d 978, 989 (Ind.Ct.App.2002), *trans. denied* (quoting *Miller Brewing Co. v. Bartholomew County Beverage Co.,* 674 N.E.2d 193, 200 (Ind.Ct.App.1996), *trans. denied* ). "Ultimately ... courts are charged with the responsibility of resolving questions of statutory interpretation and thus are not bound by an agency's interpretation of a statute or rule." *Id.*

The Board contends that it has broad discretion to establish the disciplinary procedure and because the overall statutory scheme places a great deal of responsibility on the practitioner to maintain physical and mental fitness to practice, it is reasonable and lawful for the Board to interpret the statute to require the practitioner to assume the cost of the examination. The Board also contends that it was Ross' burden to demonstrate that he possessed the mental capability to engage in the practice of nursing and that requiring the State to bear the initial costs of a mental examination would put the burden of establishing his defense to the disciplinary charges unfairly on the State.

We agree that the statutes require a person who applies for a nursing license to "be physically and mentally capable of and professionally competent to safely engage in the practice of nursing . . . ," Ind.Code § 25–23–1–11(a)(3), and put the responsibility on the practitioner to conduct his practice "in accordance with the standards established by the [Board]. . . ." Ind.Code § 25–1–9–4(a). We disagree, however, that this necessarily means the practitioner has the initial burden of proving his physical or mental fitness in a disciplinary proceeding once he has his license. A practitioner "is subject to the exercise of disciplinary sanctions . . . if, after a hearing, the board finds . . . a practitioner has continued to practice although the practitioner has become unfit to practice due to . . . physical or mental disability. . . ." Ind. Code § 25–1–9–4(a)(4)(C). The State, as the proponent of the disciplinary complaint, has the burden of proving that discipline is appropriate. That includes, in this case, proving Ross is suffering from a mental disability sufficient to impact his fitness to engage in the practice of nursing. Although the Board contends that Ross is asking for the State to pay to prove his defense, it could similarly be said that the State is asking Ross to pay to prove its case.

In addition, Indiana Code section 25–1–9–15 provides for recovery of costs by the Board: "Practitioners who have been subjected to disciplinary sanctions may be required by [the Board] to pay for the costs of the proceedings." Costs for expert witnesses are among the allowable costs. Ind.Code § 25–1–9–15(7). Thus, if the State bears the initial burden of paying for a physical or mental examination and such examination is subsequently used as evidence supporting a finding that disciplinary sanctions are appropriate, the Board can order the practitioner to pay for the examination as part of the discipline and recoup the cost. If, however, the practitioner is required to bear the initial burden of paying for the examination and discipline is *not* imposed, he has no similar recourse for recouping his costs.

Based upon the facts that the statute authorizing the Board to order a physical or mental examination is silent as to who shall bear the initial financial responsibility for the examination, that the burden of proof in a disciplinary proceeding rests with the State, and that the legislature has provided a mechanism for the Board to recoup costs *after* disciplinary sanctions are imposed, we hold that the trial court properly determined that the Board does not have statutory authority to impose costs on Ross prior to any determination of professional misconduct.

2. Violation of Ross' Due Process Rights

A due process claim requires the consideration of two factors: first, there must be the deprivation of a constitutionally protected property or liberty interest; and second, a determination of what procedural safeguards are then required. *City of Indianapolis v. Tabak*, 441 N.E.2d 494, 496 (Ind.Ct.App.1982). Ross based his claim on the deprivation of his property interest in his license without due process. The trial court found that Ross had a recognized property interest in his nursing license and that the Board's imposition of costs prior to a disciplinary determination deprived him of due process.

Whether one has a property interest in a license depends upon whether an individual has a legitimate claim of right to it, which in turn is dictated by the amount of discretion given to the licensing authority. *Indiana Family and Soc. Servs. Admin. v. Jones*, 691 N.E.2d 1354, 1356 (Ind. Ct.App.1998). Although the Board has some discretion in assessing an applicant's physical and mental capability and profes-

sional competence to engage in the practice of nursing, once that assessment is made, and if all other objective requirements are met, the Board "shall issue to the applicant a license." Ind.Code § 25–23–1–11(a), (c). Thus, there is not a great deal of discretion in the granting of a license. Accordingly, Ross had a property interest in the nursing license issued to him. The Board does not seem to dispute that Ross has a property interest in his license, but contends that Ross did not show a "property interest in not paying for his psychiatric exam...." Brief of Appellees/Cross–Appellants at 20.

The Board attempts to draw too fine a distinction. Ross' claim is not that he had a property interest in not paying for the mental examination. Rather, his claim is that by requiring him to pay for the examination before a determination of professional misconduct was made, the Board denied the procedural safeguards he was due to protect his property interest in his license. We agree with Ross. Having been granted a license, he was entitled to certain protections before it was revoked or suspended. One of those protections is not being sanctioned before it is determined that sanctions are appropriate. The order requiring him to pay the costs of a State-requested mental examination which would be used in the State's case against him is basically a sanction. The trial court properly found that such a requirement violated Ross' due process rights and granted summary judgment to him.

### III. Ross' Issue: Immunity and Attorney's fees

Having determined that the trial court correctly decided this case on its merits, we turn to Ross' contention that the trial court erred in failing to award him attor-

ney's fees upon finding for him on the merits of his complaint regarding the pre-discipline assessment of costs.

 In a section 1983 action or proceeding, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs...." 42 U.S.C. § 1988(b). To qualify as a "prevailing party," the plaintiff must obtain at least some relief on the merits of his claim which directly benefits him at the time of the judgment. *Farrar v. Hobby*, 506 U.S. 103, 111, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992); *Indiana State Bd. of Public Welfare v. Tioga Pines Living Center, Inc.*, 622 N.E.2d 935, 946–47 (Ind.1993), *cert. denied*, 510 U.S. 1195, 114 S.Ct. 1302, 127 L.Ed.2d 654 (1994). The trial court's order states that Ross is the prevailing party. *See* Appellant's Appendix at tab 11, page 3. Ross contends that because he was the prevailing party, he is entitled to attorney's fees. The Board does not dispute that, if the trial court's order stands, as we have determined that it does, Ross was the prevailing party.[6] Rather, the Board's sole counter-argument rests on the premise that the Board and the Bureau are not section 1983 "persons" and that the Board members, sued in their individual capacities only, are not subject to an award of attorney's fees. As we have determined above that Ross' complaint sufficiently stated a claim against the Board members acting in their official capacities, the Board's counter-argument is unavailing. We turn, then, to the trial court's finding that quasi-judicial immunity prevented an award of attorney's fees.

The United States Supreme Court has stated that judicial immunity is no bar to the award of section 1988 attorney's fees.

---

**6.** Although Ross was ultimately disciplined, and thus could properly have been ordered to pay the costs of the examination *after* the disciplinary proceeding was concluded, he did prevail on the claim presented: whether the Board could order him to pay those costs *prior* to the disciplinary proceedings, and thus he qualifies as a "prevailing party."

*Pulliam v. Allen,* 466 U.S. 522, 544, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984). The legislative history of section 1988 confirms that Congress intended for attorney's fees to be available in any action to enforce section 1983 regardless of whether damages would be barred or limited by immunity. *Id.* at 543–44, 104 S.Ct. 1970. Thus, whether the Board would be entitled to immunity from an award of damages, an issue we need not address, it is still subject to a section 1988 attorney fee award. We therefore reverse that part of the trial court's order denying Ross' request for attorney's fees and remand to the trial court for a determination of the appropriate amount of the award, including reasonable attorney's fees incurred in the preparation of this appeal.

### Conclusion

The trial court properly granted summary judgment for Ross on finding that the Board's practice of imposing the costs of a pre-disciplinary physical or mental examination on the practitioner denies the practitioner due process. The trial court erred, however, in denying Ross' request for attorney's fees. Attorney's fees are recoverable pursuant to section 1988 regardless of any immunity to which the "person" might otherwise be entitled. Thus, the trial court's order is affirmed inasmuch as it grants summary judgment to Ross on the merits of his complaint, and is reversed as to the denial of attorney's fees. This cause is remanded to the trial court for further proceedings consistent with this opinion.

Affirmed in part and reversed and remanded in part.

FRIEDLANDER and VAIDIK, JJ., concur.