Sheila **RITCHHART**, Appellant–Plaintiff,

v.

**INDIANAPOLIS PUBLIC SCHOOLS**, Appellee–Defendant.

No. 49A02–0307–CV–579.

Court of Appeals of Indiana.

July 23, 2004.

W. Scott Montross, John F. Townsend, III, Townsend & Montross, Indianapolis, IN, Attorneys for Appellant.

Caren L. Pollack, Mandel Pollack & Horn, P.C., Indianapolis, IN, Attorney for Appellee.

## OPINION

KIRSCH, Chief Judge.

Sheila Ritchhart appeals the trial court's entry of summary judgment in her action against Indianapolis Public Schools ("IPS") seeking damages for the negligent infliction of emotional distress and presents two issues for our review. We find the following restated issue dispositive:

> Do the designated materials establish that Ritchhart may not maintain an action for the negligent infliction of emotional distress where the undisputed facts show that IPS, which transported her young child to and from school, delivered the child to the wrong address, causing her not to know of his whereabouts for three hours?

We affirm.

## FACTS AND PROCEDURAL HISTORY

Ritchhart is the mother of Joshua Ritchhart who was three years old at the time of the incident giving rise to this action. Joshua suffers from Marfan's Syndrome, a genetic disorder that renders him legally blind, autistic, and vulnerable to a variety of connective tissue disorders and grand mal seizures. Although Joshua can hear and is aware of what is going on around him, he is non-verbal and unable to respond to questions or engage in reciprocal communication.

In the fall of 2000, Joshua began attending the Indiana School for the Blind in Indianapolis. IPS provided bus service for Joshua between school and home. On December 18, 2000, IPS employees could not locate Joshua's identification card. They misidentified Joshua as "Josh Pierce" and drove Joshua to the Pierces' residence. There, in response to the bus sounding its horn, a man came out to the bus, looked at Joshua and informed the bus driver that Joshua was not his child. The bus driver contacted the dispatch by radio and explained the situation whereupon another bus driver advised by radio of the address to which the child should have been delivered. The driver then drove Joshua to the specified address, knocked on the door and determined that no one was at home. A neighbor from across the street, Karen Massey, came over and told the driver that there had been a death in the family at that address and that she would keep Joshua and had done so before. The bus attendant, Elizabeth McChristian, obtained certain information from Massey and left Joshua with her.

In the meantime, Ritchhart was waiting outside her residence for the bus to bring Joshua home. Because the bus normally arrived between 3:45 and 4:15 p.m., she became concerned when the bus had not arrived by 4:15 p.m. By 4:45 p.m., she was in tears and called the School for the Blind to find out what had happened. She also called the IPS police, the Indianapolis Police Department, and television stations in

her attempt to find out what had happened. Around 6:30 p.m., the IPS police found Joshua, and the school called Ritchhart and told her that Joshua was with Karen Massey. Ritchhart did not know anyone named Karen Massey, had not authorized Joshua to be released to Massey, and continued to worry. IPS police returned Joshua to his home at 7:30 p.m.

Ritchhart took Joshua to Riley Hospital to be examined. The examination determined that Joshua was physically unharmed. Ritchhart has received psychological counseling over the incident.

She filed suit against IPS for negligent infliction of emotional distress. IPS moved for summary judgment contending that Ritchhart was contributorily negligent as a matter of law because she failed to ensure that Joshua could be readily identified and that because there was no direct impact or involvement by Ritchhart in the incident giving rise to this action, she did not have a claim for negligent infliction of emotional distress. Without specifying the basis for its ruling or designating the issue upon which it determined there was no genuine issue as to any material fact, the trial court entered summary judgment. Ritchhart now appeals.

## DISCUSSION AND DECISION

■ In reviewing the grant of a motion for summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *Wilson v. Lincoln Fed. Sav. Bank*, 790 N.E.2d 1042, 1046 (Ind.Ct.App.2003); *Ross v. Indiana State Bd. of Nursing*, 790 N.E.2d 110, 115–16 (Ind.Ct.App.2003). We do not weigh evidence, but will liberally construe the facts in the light most favorable to the nonmoving party. *Wilson*, 790 N.E.2d at 1046; *Ross*, 790 N.E.2d at 116. Summary judgment should be granted only when the designated evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Poznanski ex rel. Poznanski v. Horvath*, 788 N.E.2d 1255, 1258 (Ind.2003); *Reeder v. Harper*, 788 N.E.2d 1236, 1240 (Ind.2003). Accordingly, on appeal, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *Wilson*, 790 N.E.2d at 1046. The party appealing the grant of summary judgment has the burden of persuading this court on appeal that the trial court's ruling was improper. *Id.; Ross*, 790 N.E.2d at 116.

Relying on specifically designated evidence, the moving party bears the burden of making a prima facie showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Ross*, 790 N.E.2d at 115. If the moving party meets these two requirements, the burden shifts to the nonmovant to set forth specifically designated facts showing that there is a genuine issue for trial. *Id.* A genuine issue of material fact exists where facts concerning an issue that would dispose of the litigation are in dispute or where the undisputed material facts are capable of supporting conflicting inferences on such an issue. *Poznanski*, 788 N.E.2d at 1258; *Ross*, 790 N.E.2d at 115. To be considered genuine for summary judgment purposes, a material issue of fact must be established by sufficient evidence in support of the claimed factual dispute to require a jury or judge to resolve the parties' differing versions of the truth at trial. *Street v. Shoe Carnival, Inc.*, 660 N.E.2d 1054, 1056–57 (Ind.Ct. App.1996).

■ A fact is material when its existence facilitates resolution of any of the issues involved. *Rose & Walker v. Swaffar*, 721 N.E.2d 899, 901 (Ind.Ct.App.2000),

*trans. denied.* Notwithstanding a conflict in the facts on some elements of a claim, summary judgment is appropriate when there is no dispute with regard to facts that are dispositive of the litigation. *Id.* However, even if the facts are undisputed, summary judgment is inappropriate where the record reveals an incorrect application of the law to the facts. *Ross,* 790 N.E.2d at 115.

This court may not search the entire record but may only consider the evidence that has been specifically designated. *Goodrich v. Indiana Michigan Power Co.,* 783 N.E.2d 793, 795 (Ind.Ct.App.2003), *trans. denied.* All pleadings, affidavits, and testimony are construed liberally and in the light most favorable to the nonmoving party. *Id.; May v. Frauhiger,* 716 N.E.2d 591, 594 (Ind.Ct.App.1999).

IPS argues that Ritchhart failed to establish a direct impact from the alleged negligent conduct of IPS and, therefore, cannot maintain an action for negligent infliction of emotional distress. Ritchhart responds that a direct impact is no longer required under Indiana law, that direct involvement is the standard, and that she clearly satisfies that standard.

Nationally, claims of negligent infliction of emotional distress have proved daunting to appellate courts. Fearing that allowing recovery for the negligent infliction of emotional distress will open the floodgates to spurious claims, courts have adopted a number of approaches: the impact rule; the modified impact rule; the direct involvement rule with conditions; the foreseeability rule; the zone of danger rule; and various bright line rules. *See, e.g., Rowell v. Holt,* 850 So.2d 474 (Fla.2003) (reaffirming vitality of impact rule); *Cohen v. McDonnell Douglas Corp.,* 389 Mass. 327, 450 N.E.2d 581 (1983) (applying a "direct observer" rule); *Butler v. The Burlington Northern,* 119 S.W.3d 620 (Mo.

App. W.D.2003) (applying zone of danger test); *Andersen v. Baccus,* 335 N.C. 526, 439 S.E.2d 136 (1994) (applying foreseeability test). Some ten years ago, the United States Supreme Court summarized the state of the law nationally regarding negligent infliction of emotional distress at that time as follows:

> Three major limiting tests for evaluating claims alleging negligent infliction of emotional distress have developed in the common law. The first of these has come to be known as the physical impact test. It originated a century ago in some of the first cases recognizing recovery for negligently inflicted emotional distress. At the time Congress enacted FELA in 1908, most of the major industrial States had embraced this test. Under the physical impact test, a plaintiff seeking damages for emotional injury stemming from a negligent act must have contemporaneously sustained a physical impact (no matter how slight) or injury due to the defendants conduct. Most jurisdictions have abandoned this test, but at least five States continue to adhere to it.
>
> The second test has come to be referred to as the zone of danger test. It came into use at roughly the same time as the physical impact test, and had been adopted by several jurisdictions at the time FELA was enacted. Perhaps based on the realization that a near miss may be as frightening as a direct hit, the zone of danger test limits recovery for emotional injury to those plaintiffs who sustain a physical impact as a result of a defendants negligent conduct, or who are placed in immediate risk of physical harm by that conduct. That is, those within the zone of danger of physical impact can recover for fright, and those outside of it cannot. The zone of danger

test currently is followed in 14 jurisdictions.

The third prominent limiting test is the relative bystander test, which was first enunciated in *Dillon v. Legg*, 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912 (1968). In *Dillon*, the California Supreme Court rejected the zone of danger test and suggested that the availability of recovery should turn, for the most part, on whether the defendant could reasonably have foreseen the emotional injury to the plaintiff. The court offered three factors to be considered as bearing on the question of reasonable foreseeability: (1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it. (2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence. (3) Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship. *Id.* at 740–41, 69 Cal.Rptr. at 80, 441 P.2d at 920. The courts of nearly half the States now allow bystanders outside of the zone of danger to obtain recovery in certain circumstances for emotional distress brought on by witnessing the injury or death of a third party (who typically must be a close relative of the bystander) that is caused by the defendants negligence. Most of these jurisdictions have adopted the *Dillon* factors either verbatim or with variations and additions, and have held some or all of these factors to be substantive limitations on recovery. *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 547–49, 114 S.Ct. 2396, 2407, 129 L.Ed.2d 427 (1994). The court also explained that many jurisdictions that follow the zone of danger or relative bystander tests also require that a plaintiff demonstrate a physical injury or effect that is the direct result of the emotional injury in order to recover. *Id.* at n. 11.

Prior to 1991, Indiana adhered to the impact rule in claims for negligent infliction of emotional distress. *Shuamber v. Henderson*, 579 N.E.2d 452, 454 (Ind. 1991). Under the impact rule, a plaintiff had to suffer a physical injury in order to recover damages for emotional distress in negligence actions. *Id.* In *Shuamber*, our supreme court relaxed the rule and held that to recover for the negligent infliction of emotional distress, it was sufficient for the plaintiff to demonstrate a direct impact resulting from the negligence of another if, by virtue of that direct involvement, the plaintiff sustained "an emotional trauma which is serious in nature and of a kind and extent normally expected to occur in a reasonable person." *Id.* at 456.

In *Ross v. Cheema*, 716 N.E.2d 435 (Ind. 1999), the court held that the direct impact necessary to sustain an action for negligent infliction of emotional distress must be "physical" in nature. In *Ross*, our supreme court reversed a decision of this court which had held that the plaintiff, an elderly woman sitting in the living room of her home, had sustained a sufficient impact to maintain the action where the defendant had loudly banged on the front door of her home, forced open a locked screen door, twisted the knob on the inner door of her home back and forth, and then again pounded loudly on the door. *See Ross v. Cheema*, 696 N.E.2d 437 (Ind.Ct. App.1998).

In *Conder v. Wood*, 716 N.E.2d 432 (Ind. 1999), decided the same day as *Ross*, the court relaxed the requirements of the modified impact rule. There, the plaintiff was attempting to cross the street when a

companion was struck and fatally injured by a truck. After the initial collision, the truck was still moving forward and was about to run over the plaintiff's companion a second time when the plaintiff pounded on the side of the truck in an attempt to get it to stop. Without mentioning *Ross,* the court held that the pounding constituted a sufficient impact to satisfy the rule. The court retained the direct physical impact requirement, but held that the impact need not cause physical injury, and the emotional trauma need not result from the physical injury. *Id. See also Alexander v. Scheid,* 726 N.E.2d 272 (Ind.2000) (destruction of healthy lung tissue by cancerous tumor sufficient for modified impact test).

Thus, in each of these cases, the court required that the plaintiff personally experience some type of "touching," not in the sense of a battery, but in the sense of a physical sensation, whether labeled a "physical impact," "modified physical impact," (*Shuamber*) or "direct involvement" (*Conder*).

This court has applied this test in a handful of cases, including *Powdertech v. Joganic,* 776 N.E.2d 1251 (Ind.Ct.App. 2002), where the court held that a plaintiff in an action for disability discrimination under the Americans with Disabilities Act, retaliatory discharge for claiming workers compensation benefits, and emotional distress could not maintain a claim for negligent infliction of emotional distress because there was no direct physical impact. *Id.* at 1263. *See also Munsell v. Hambright,* 776 N.E.2d 1272 (Ind.Ct.App.2002) (holding that plaintiff could not maintain an action for negligent infliction of emotional distress where there was no impact of any kind to the plaintiff or his close relative). *But see Keim v. Potter,* 783 N.E.2d 731 (Ind.Ct.App.2003) (plaintiff could maintain claim for negligent inflic-

tion of emotional distress against physician who negligently misdiagnosed plaintiff as having hepatitis C even though plaintiff did not suffer the kind of physical impact required by *Shuamber* ).

Less than one year after *Ross* and *Conder,* in *Groves v. Taylor,* 729 N.E.2d 569 (Ind.2000), our supreme court retreated from the physical impact requirement and created a new class of potential negligent infliction of emotional distress plaintiffs: relative bystanders. *Groves* involved an eight-year-old child who had witnessed an automobile accident in which her six-year-old brother was fatally injured. The court stated that a physical impact was not required where a "sufficient direct involvement" could be shown. *Id.* at 573. The court noted that the value of the physical impact requirement is that it provides clear and unambiguous evidence that the plaintiff was so directly involved in the incident giving rise to the emotional trauma that it is unlikely that the claim is "merely spurious." *Id.* at 572. The court went on to say that there are circumstances other than direct physical impact that also evidence the required level of involvement. Specifically, the court stated that there was a sufficient basis for distinguishing legitimate from spurious claims when three conditions are met. First, the plaintiff witnesses an injury that is either fatal or so serious that it would be expected to cause severe distress to the bystander. Second, the plaintiff has a relationship to the primary victim that is "analogous" to a spouse, parent, child, grandparent, grandchild or sibling. While acknowledging that emotional distress may accompany the death or severe injury of friends, acquaintances, and passersby, the court said that limiting recovery to those plaintiffs with specified relationships recognizes the special quality of these relationships but places a reasonable limit on the liability of the tortfeasor. Third, the plaintiff witnesses the incident causing the death or

serious injury or the gruesome aftermath minutes after it occurs. The court specifically contrasted this with the non-compensable experience of learning of a loved one's death or severe injury by indirect means. *Id.* Thus, the "relative bystander" test, which requires no "touching" or physical sensation, was born.

Our supreme court juxtaposed these two tests in *Bader v. Johnson,* 732 N.E.2d 1212 (Ind.2000). There, the court summarized the evolution of the law regarding negligent infliction of emotional distress in Indiana and the physical "touching" requirement. The court then held that the parents of an infant born with hydrocephalus and multiple congenital birth defects could maintain a claim for negligent infliction of emotional distress against a physician who performed prenatal genetic testing and failed to alert them of the abnormal results in time to terminate the pregnancy. The court explained:

> In this case we find that [the mother's] continued pregnancy and the physical transformation her body underwent as a result, satisfy the direct impact requirement of our modified impact rule. Provided she can prevail on her negligence claim, we see no reason why [the mother] should not be able to claim damages for emotional distress. By contrast, [the father] did not suffer a direct impact as a result of Healthcare Provider's alleged negligence. We disagree with his argument to the contrary. Rather, at most [the father] is a relative bystander, a classification of potential victims this court has recently adopted in Groves v. Taylor, 729 N.E.2d 569, 572–73 (Ind. 2000). Whether [the father] can prevail on his claim for emotional distress damages depends on the evidence adduced at trial.

*Id.* at 1222 (footnote omitted).

We have applied the relative bystander test only once. In *Blackwell v. Dykes*

*Funeral Homes,* 771 N.E.2d 692 (Ind.Ct. App.2002), *trans. denied* (2003), this court was faced with the negligent infliction of emotional distress claim of a relative. In that case, a panel of this court reversed the trial court's grant of summary judgment and held that parents of a deceased were sufficiently and directly involved in an incident in which a funeral home lost the remains of their son such that they could maintain an action for negligent infliction of emotional distress. While noting that the tripartite test set out in *Groves* was inapposite, the court found that the plaintiffs' claims satisfied the underlying rationale of *Groves* and that the plaintiffs' claim of emotional trauma was "of a kind that a reasonable person would experience" and "is not likely speculative, exaggerated, fictitious or unforeseeable." *Id.* at 697.

■ Here, Ritchhart does not claim any sort of physical "touching" from the incident that gave rise to the suit. Rather, her claim is based on her emotional distress regarding IPS's treatment of Joshua. Thus, this case falls squarely under the *Groves* line of cases that use the relative bystander test. Moreover, we need not look to the underlying rationale of *Groves,* as the *Blackwell* court was required to do, because the *Groves* test is relevant to these facts.

Instead, we employ the three-part test set out in *Groves.* The second part of the test, that the plaintiff and the primary victim have a close family relationship, is obviously satisfied here. Joshua is the primary victim in this incident; Ritchhart is Joshua's mother. This certainly constitutes a close family relationship. However, Ritchhart's claim fails to satisfy either the first or the third parts of the test. Joshua was not physically injured. More-

over, Ritchhart did not witness any part of the incident giving rise to her complaint. Instead, this situation is more akin to that identified by the *Groves* court as the non-compensable "experience of learning of a loved one's death or severe injury by indirect means." *Groves*, 729 N.E.2d at 573 (quotations omitted). While Ritchhart certainly heard upsetting news regarding her son, first that he was lost, and then later, that he had been delivered to the wrong house, she did not personally witness an upsetting scene or its "gruesome aftermath." *Id.* Under the *Groves* standard, Ritchhart may not recover for negligent infliction of emotional distress on these facts. The trial court did not err in granting summary judgment.

Affirmed.

RILEY, J., and ROBB, J., concur.