Joseph DECKER, et al., International Union of Operating Engineers, Local No. 841, Appellants,

v.

STATE of Indiana, Appellee.

No. 1–181A14.

Court of Appeals of Indiana, Fourth District.

Sept. 30, 1981.

James O. McDonald, Everett, Everett & McDonald, Terre Haute, for appellants.

Linley E. Pearson, Atty. Gen., Steven A. Spence, Deputy Atty. Gen., Indianapolis, for appellee.

MILLER, Judge.

We have consolidated these two interlocutory appeals as they present the same legal issue. Both Joseph Decker[1] and International Union of Operating Engineers Local 841 (hereinafter collectively referred to as the Landowners) objected in the trial court to the State's condemnation of their property, claiming that no good faith offer based on fair market value had been made to them as a condition precedent to condemnation pursuant to Ind.Code 32–11–1–2.1. The State had offered the Landowners $50 each as a "token" payment for their access rights apparently on the basis that there was no damage to the properties. The trial court, based on the language of Ind.Code 32–11–1–9 which provides that the Highway Department "in its action for condemnation shall not be required to prove that an offer to purchase was made to the landowner," overruled the Landowners' objections, approved the appropriation of the properties and appointed appraisers. We hold the provisions of IC 32–11–1–2.1 requiring a condemnor, here the Highway Department, to make an offer based on the actual fair market value of the property as a condition precedent to condemnation, being the most recent expression of the Legislature, supersede the earlier provision of the statute relieving the State of the obligation to prove an offer to purchase (IC 32–11–1–9). We therefore reverse.

BACKGROUND

The record here reveals the State, in order to convert U.S. Highway 41 (US 41) in Vanderburgh County to a limited access

---

1. Although not revealed in the record, apparently Joseph Decker is the owner of the property. The other appellants in the Decker action were joined to assert any interest they might have in the property.

highway, brought its actions herein against the Landowners. The State sought to condemn only their access rights to US 41—no actual land was taken. The Landowners responded to the State's condemnation complaint by objecting to the taking, contending first, the access rights were being taken in an arbitrary and capricious manner and, second, the State filed its complaint "without having first offering fair market value for said property, the same being in violation of law as evidenced by the fact that Plaintiffs [State] offered all property owners with access rights on US Highway 41 the same compensation without regards [sic] to the amount of property owned or its location." The Landowners asked for evidentiary hearings on their objections.

After the hearings,[2] the court ruled "[p]laintiff has made an administrative offer of Fifty Dollars ($50.00) for easements sought for the U.S. Highway 41 project to Defendants and the Plaintiff is not compelled to make an offer on each individual parcel based upon actual fair market value and that plaintiff is exempted by virtue of I.C. 32–11–1–9."

## DECISION

By way of background to our analysis of the statutory language which controls the instant litigation, we observe that in 1905 our Legislature enacted a provision as part of the Condemnation Act which required, *inter alia*, that "any person, corporation, or other body having the right to exercise the power of eminent domain" must "make an effort to purchase" the land "before proceeding to condemn."[3] The Act further provided any condemnation complaint filed by a condemnor must allege the parties have been unable to reach an agreement for the purchase of the land.[4] It is clear these provisions of the 1905 Act, still found in the statute today, applied to the State as well as other condemning authorities. *See State v. Pollitt,* (1942) 220 Ind. 593, 45 N.E.2d 480, where our Supreme Court held the words "or other body having the right to exercise the power of eminent domain" are broad enough to include the State or any of its administrative agencies. *See also Wampler v. Trustees of Indiana University,* (1961) 241 Ind. 449, 172 N.E.2d 67; *Root v. State,* (1934) 207 Ind. 312, 192 N.E. 447.

In 1961, however, the requirement of an effort to purchase and a corresponding allegation in the condemnor's complaint were implicitly amended so as to excuse the State Highway Commission from compliance. Although this language of the 1905 Act was never expressly altered, a new section added by the 1961 statute provided the State Highway Department of Indiana "shall not be required to prove that an offer to purchase was made,"[5] which language our Supreme Court interpreted in *Sadlier v. State,* (1969) 252 Ind. 525, 251 N.E.2d 27, to mean that the State, as legal representative for the Highway Department, is not required (like other condemnors) to make an offer to purchase.[6] In this regard the Court stated:

"Although we as a Court may feel that landowners are entitled to have offers and attempts made prior to condemnation actions, nevertheless the legislature constitutionally is the one that has the right to determine such prerequisites to condemnation actions, and we have no right to override the plain statement of the

2. The "hearings," held at different times at the trial level, produced no significant evidence. No testimony was given. In the Decker case the State offered one exhibit, a certified copy of the resolution by the Indiana State Highway Commission authorizing condemnation of the Decker property, and then rested. In the International Union case the State tendered an exhibit consisting of its offer to purchase of $50 in the form as prescribed by IC 32–11–1–2.1.

3. *See* Laws 1905, ch. 48, § 1 at 59.

4. *See* Laws 1905, ch. 48, § 2 at 60.

5. *See* Acts 1961, ch. 317, § 2 at 887.

6. We note such failure to make an offer to purchase would not be in violation of the Indiana Constitution, Article 1, § 21, which provides private property may not be *taken* for public use without just compensation, since the State would not assume possession of the property in question until after the deposit of the court-appointed appraiser's estimation of damages.

legislature in regard to actions brought on behalf of the State Highway Department."

*Id.* at 529, 251 N.E.2d at 29.

Evidently, the trial court in the instant case looked to the language of this 1961 Act, codified at IC 32–11–1–9, to arrive at its conclusion the State in the case at bar "is not compelled to make an offer on each individual parcel based upon fair market value. . . ." We note, however, that in 1977 the relevant statute was again amended (in the same fashion as it was amended in 1961) by the addition of a new code section.[7] That new section, Ind.Code 32–11–1–2.1, which does not purport to create any exception to its provisions for the State, states in part as follows:

"(a) Definitions. For the purpose of this section:

  .     .     .     .     .

(2) *'Condemnor' means any person or entity authorized by this state to exercise the power of eminent domain.*

(b) *As a condition precedent to filing a complaint in condemnation,* and excepting any action pursuant to IC 8–1–13–19 [concerning the annexation of territory by a public utility], *a condemnor may enter upon the property or interest therein as provided in this chapter, and shall at least thirty (30) days prior to filing such complaint make an offer to purchase the property therein,* in the form prescribed in subsection (d). The offer shall be served personally or by certified mail upon the owner of the land or easement thereon, or his designated representative, for which condemnation is sought." (Emphasis added.)

Subsection (d) sets out the form of offer and requires that it must be based on fair market value.

We believe it is this most recent, specific expression of the Legislature's intent which is controlling in the instant case, and that such expression clearly anticipates that *any* condemnor, including the State, must make a good-faith offer to purchase in the partic-

ular manner described by the statute before attempting to exercise its eminent domain authority. Here, in drafting this most recent statute, the Legislature utilized the commendable drafting technique of including specific definitions of the critical terms involved in the statute, and "[t]he lawmaking body's own construction of its language, by means of definition of the terms employed, should be followed in the interpretation of the act or section to which it relates and is intended to apply." 73 Am.Jur.2d § 225 at 413 (1974). *See also*: 1A Sutherland Statutory Construction, § 20.08 at 59 (4th ed. 1972), where it is stated, "[w]hen a legislature defines the language it uses, its definition is binding upon the court. . . ." Our conclusion in this regard is consistent with the following established principles of statutory construction, as enunciated in *Economy Oil Corp. v. Indiana Dept. of State Revenue,* (1975) 162 Ind.App. 658, 321 N.E.2d 215:

"There is a strong presumption that the legislature in enacting a particular piece of legislation is aware of existing statutes on the same subject. *Morgan County R.E.M.C.* [*v. Indianapolis Power & Light Co.* (1973), 260 Ind. 164, 302 N.E.2d 776]; *Chaffin v. Nicosia* (1973), Ind. App., 297 N.E.2d 904 [reversed as to result at (1974) 261 Ind. 698, 310 N.E.2d 867.] Statutes relating to the same general subject matter are in pari materia and should be construed together so as to produce a harmonious system. *State ex rel. Moore v. Smock* (1973), [156] Ind.App. [158], 295 N.E.2d 857; *Porter Memorial Hospital v. Harvey* (1972), [151] Ind.App. [299], 279 N.E.2d 583. In this respect, when two statutes on the same subject must be construed together, the court should attempt to give effect to both; however, where the two are repugnant in any of their provisions, then the latter statute will control and operate to repeal the former to the extent of the repugnancy. *State ex rel. Todd v. Hatcher* (1973), [158]

---

7. *See* Acts 1977, Public Law No. 312, § 1 at 1428, effective July 1, 1977.

Ind.App. [144], 301 N.E.2d 766; *Chaffin, supra*."

*Id.* at 664, 321 N.E.2d at 219.

We find the foregoing rules of statutory construction pertaining to recent and specific manifestations of the Legislature's intent to be particularly applicable where, as in the instant case, the Legislature has previously amended the statute in question by adding specific new sections without expressly repealing older, more general expressions of its intention. Accordingly, we hold the State is required to employ the particular eminent domain procedures expressed in IC 32–11–1–2.1, *supra*, including the obligation to make a good faith offer as expressed in subsections (b) and (d) of that statute. Such obligation necessarily requires the State not only to *allege* an offer was made, but also when a timely objection is interposed, to *prove* such offer was tendered in the manner anticipated by the statute. It may not be presumed the Legislature intended the illogical or absurd result of requiring the State to "make" an offer to purchase, while relieving it of the obligation of establishing such offer as a condition precedent to condemnation. *E. g., Allen County Department of Public Welfare v. Ball Memorial Hospital*, (1969) 253 Ind. 179, 252 N.E.2d 424. *See generally Sadlier v. State, supra.*

As this Court has recently held, a good faith offer pursuant to IC 32–11–1–2.1(d) anticipates an offer based on the fair market value of the property in question.[8] *Unger v. Indiana & Michigan Electric Co.*, (1981) Ind.App., 420 N.E.2d 1250. We also believe, however, the obligation thus imposed on the State by the Legislature is not an unduly burdensome one, since it is settled law the condemnor is "obligated only to tender a reasonable offer honestly and in good faith," *id.* at 1257, *citing Wampler v. Trustees of Indiana University, supra* and "the mere fact there exists some disagree-

ment or conflict in opinion as to fair market value will be insufficient to sustain an objection to the complaint in condemnation." *Unger v. Indiana & Michigan Electric Co., supra* at 1260. See also *Murray v. City of Richmond*, (1971) 257 Ind. 548, 553, 276 N.E.2d 519, 522 where our Supreme Court held, in defining the requisites of a good faith effort to purchase prior to the enactment of IC 32–11–1–2.1, that:

"[w]here, as here, the condemning authority has employed professional appraisers and has based its firm offer to purchase on figures presented to it by its appraisers, we hold that such an offer to purchase meets the requirement to negotiate as set out in the statute."

Thus, the issue, if raised, of whether a good faith offer was made may customarily be disposed of by the State by a request for summary judgment accompanied by an affidavit representing the offer was based on an appraisal by a qualified appraiser, with a copy of the appraisal attached to such affidavit.

In the instant cases the trial court erroneously concluded as a matter of law the State was not required to make good-faith offers. It is thus apparent the causes must be remanded to the trial court with instructions to determine, by summary proceedings or after evidentiary hearings, whether offers based on fair market value were made.

Reversed and remanded.

CHIPMAN, P. J., and YOUNG, J., concur.

---

**8.** IC 32–11–1–2.1(d) provides, in part, the "Uniform Land or Easement Acquisition Offer" must state:

"It is our opinion that the fair market value of the (property) (easement,) we want to acquire from you is $_____, and therefore, _____ condemnor offers you $_____ for the above described (property) (easement). You have twenty-five (25) days from this date to accept or reject this offer."