**BURD MANAGEMENT, LLC,**
**Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A02–0307–CV–572.

Court of Appeals of Indiana.

April 12, 2004.

Joseph W. Hammes, Ann Marie Waldron, Tabbert, Hahn, Earnest & Weddle, LLP, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, David L. Steiner, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Chief Judge.

Burd Management, LLC (Burd) appeals the trial court's grant of summary judgment in favor of the State. Burd raises three issues on appeal, which we consolidate and restate as follows:

I. Whether the trial court properly granted summary judgment in favor of the State on the basis that the Indiana Department of Transportation (INDOT) was not required to make or to prove a good faith offer to purchase Burd's property prior to filing its complaint for appropriation.

II. Whether the trial court correctly denied Burd's motion to compel the production of discovery responses.

We reverse and remand with instructions.

## FACTS AND PROCEDURAL HISTORY

INDOT is engaged in the improvement of public highway U.S. 36, which is also called Pendleton Pike. Burd owns real estate in Marion County, the boundary of which is adjacent to U.S. 36/Pendleton Pike. The commonly known address of Burd's property is 7848 Pendleton Pike, Lawrence, Indiana. INDOT determined that it needed to appropriate part of Burd's real estate for the public purpose of improving the highway. The State, through INDOT, presented a Uniform Land Acquisition Offer to purchase the real estate owned by Burd for $57,950.00. The uniform offer was based on two appraisals obtained by the State. Appraiser Steven R. Graves determined that the total fair market value of the real estate to be acquired by the State and any and all resulting damages was $57,939.10. Another appraiser, Robert Souchon, determined that the fair market value of Burd's property and any and all resulting damages was $57,950.00. The only difference between Graves's and Souchon's values was that Souchon rounded up in favor of Burd. The appraisals were not attached to the appraisers' affidavits. Burd rejected the uniform offer.

Thereafter, the State initiated a condemnation action by filing its Complaint for Appropriation of Real Estate. Burd filed objections to the appropriation proceedings. The objections claimed the following: (1) the State failed to comply with the procedures for appropriating Burd's real estate; (2) the State failed to make a good faith offer or effort to purchase Burd's property; and (3) the State improperly alleged in its Complaint that its highway improvement project benefits Burd's remaining property after the condemnation. Burd also served Landowner's Interrogatories to Plaintiff, Landowner's Request for Production of Documents, and Landowner's First Requests for Admissions upon the State (collectively, "the discovery requests"). The State filed its response to the discovery requests and objected to all but one interrogatory and one admission. The State then filed a motion for summary judgment. Burd filed a motion to compel responses to its discovery requests.

Initially, the trial court granted the motion to compel, but vacated the order stating that it would not rule upon the discovery issues until it ruled on the State's motion for summary judgment. The trial court held a hearing on the motion for summary judgment and granted summary judgment in favor of the State. The trial court determined that the State was not required to prove that an offer to purchase was made to Burd prior to filing the condemnation action. The trial court also denied Burd's motion to compel discovery requests and issued a protective order

shielding the State's appraisals from discovery in this case. The trial court issued an Order of Appropriation and Appointment of Appraisers. Burd now appeals.

## DISCUSSION AND DECISION

### I. Summary Judgment

Our standard of review of a summary judgment order is well-settled: summary judgment is appropriate if the "designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Ind. Trial Rule 56(C); *Ross v. Indiana State Bd. of Nursing*, 790 N.E.2d 110, 116 (Ind.Ct.App. 2003). Relying on specifically designated evidence, the moving party bears the burden of making a prima facie showing that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Ross*, 790 N.E.2d at 116 (citing *I/N Tek v. Hitachi Ltd.*, 734 N.E.2d 584, 586 (Ind.Ct.App. 2000), *trans. denied* ). If the moving party meets these two requirements, the burden shifts to the nonmovant to set forth specifically designated facts showing that there is a genuine issue for trial. *Ross*, 790 N.E.2d at 116. A genuine issue of material fact exists where facts concerning an issue that would dispose of the litigation are in dispute or where the undisputed material facts are capable of supporting conflicting inferences on such an issue. *Gilman v. Hohman*, 725 N.E.2d 425, 428 (Ind.Ct.App.2000), *trans. denied*. Even if the facts are undisputed, summary judgment is inappropriate where the record

reveals an incorrect application of the law to the facts. *Id.*

■ On appeal, we are bound by the same standard as the trial court, and we consider only those matters that were designated at the summary judgment stage. *Ross*, 790 N.E.2d at 116. We do not reweigh the evidence, but we liberally construe all designated evidentiary material in the light most favorable to the nonmoving party to determine whether there is a genuine issue of material fact for trial. *Id.* The party that lost in the trial court has the burden to persuade the appellate court that the trial court erred. *Id.* Specific findings and conclusions by the trial court are not required, and although they offer valuable insight into the rationale for the judgment and facilitate our review, we are not limited to reviewing the trial court's reasons for granting or denying summary judgment. *Bernstein v. Glavin*, 725 N.E.2d 455, 458 (Ind.Ct.App.2000), *trans. denied.* A grant of summary judgment may be affirmed upon any theory supported by the designated materials. *Id.*

Burd argues that the trial court improperly granted summary judgment in favor of the State because the State failed to make a good faith offer to purchase Burd's property prior to initiating a condemnation action. The State responds that under IC 32–24–1–13(a)[1] it is not required to make a good faith offer to purchase Burd's property prior to filing its Complaint for Appropriation of Real Estate, i.e. initiating a condemnation action.

■ The eminent domain act and its case law clearly mandate that the State is required to make a good faith effort to

---

1. IC 32–24–1–13(a) states: (a) The Indiana department of transportation or any state board, agency, or commission that succeeds the department in respect to the duties to locate, relocate, construct, reconstruct, repair, or maintain the public highways of

Indiana, having the right to exercise the power of eminent domain for the public use, in its action for condemnation is not required to prove that an offer of purchase was made to the property owner in an action under this article.

purchase as a condition precedent to filing a condemnation action. *See* IC 32–24–1–5(a)[2]; *Decker v. State*, 426 N.E.2d 151, 153 (Ind.Ct.App.1981). If the State does not make a good faith offer, it does not have the legal authority to proceed with its power of eminent domain. *Decker*, 426 N.E.2d at 153. However, there is a distinction between the State's obligation to *make* a good faith offer as opposed to whether the State must *prove* it made a good faith offer. In this case, the State incorrectly commingles the statutory requirements of "making" and "proving" a good faith offer as though these terms were interchangeable.

In 1905, our legislature enacted a provision as part of the Condemnation Act (now the general eminent domain act) which required, inter alia, that "any person, corporation, or other body having the right to exercise the power of eminent domain" must "make an effort to purchase" the land "before proceeding to condemn."[3] The Act further provided any condemnation complaint filed by a condemnor must allege the parties have been unable to reach an agreement for the purchase of the land.[4] It is clear these provisions of the 1905 Act, still found today in the general eminent domain statute (IC 32–24–1), apply to the State as well as other condemning authorities. *See State v. Pollitt*, 220 Ind. 593, 45 N.E.2d 480 (1942) (holding that the words "or other body having the right to exercise the power of eminent domain" are broad enough to include the

State or any of its administrative agencies). *See also* IC 32–24–1–3(b)(2).

In 1961, the requirement of an effort to purchase and a corresponding allegation in the condemnor's complaint were amended to excuse the State Highway Commission from compliance. Although the language of the 1905 Act was never expressly amended, IC 32–11–1–9 (now IC 32–24–1–13) added in 1961, provided that the State Highway Department of Indiana "shall not be required to prove that an offer to purchase was made."[5] Our supreme court interpreted this language to mean that the State, as legal representative for the Highway Department, is not required (unlike other condemnors) to make an offer to purchase. *Sadlier v. State*, 252 Ind. 525, 251 N.E.2d 27 (1969). In this regard, our supreme court stated:

> Although we as a Court may feel that landowners are entitled to have offers and attempts made prior to condemnation actions, nevertheless, the legislature constitutionally is the one that has the right to determine such prerequisites to condemnation actions, and we have no right to override the plain statement of the legislature in regard to actions brought on behalf of the State Highway Department.

*Id.* at 529, 251 N.E.2d at 29.

In 1977, the relevant statute was again amended by the addition of a new code section, IC 32–11–1–2.1[6] (now codified at IC 32–24–1–5). This amendment added a requirement that all condemnors, including the State, must make a good faith offer to

---

**2.** IC 32–24–1–5(a) states:

As a condition precedent to filing a complaint in condemnation, and except for an action brought under IC 8–1–13–19 (repealed), a condemnor may enter upon the property as provided in this chapter and must, at least thirty (30) days before filing a complaint, make an offer to purchase the property in the form prescribed in subsection (c).

**3.** *See* Laws 1905, ch. 48, s 1 at 59.

**4.** *See* Laws 1905, ch. 48, s 2 at 60.

**5.** *See* Acts 1961, Ch. 317, s 2 at 887.

**6.** *See* Acts 1977, Public Law No. 312, s 1 at 1428, effective July 1, 1977.

purchase, based on the fair market value of the property, as a condition precedent to filing a condemnation action. *See Decker*, 426 N.E.2d at 153.

In *Decker*, the trial court concluded that the language of IC 32–11–1–9 (now codified at IC 32–24–1–13) applied and that the State was not compelled to make an offer on each individual parcel based upon fair market value. *Id.* On appeal, this court reversed, noting that the 1977 amendment does not purport to create any exception to its provisions for the State and that our legislature's intent clearly anticipated that any condemnor, including the State, must make a good faith offer to purchase in the particular manner described by the statute before attempting to exercise its eminent domain authority. *Id.*

■ The *Decker* court, however, acknowledged that there is a strong presumption that the legislature in enacting a particular piece of legislation is aware of existing statutes on the same subject. *Id.* *See also Morgan County R.E.M.C. v. Indianapolis Power & Light Co.*, 260 Ind. 164, 302 N.E.2d 776 (1973). Statutes relating to the same general subject matter are in pari materia and should be construed together so as to produce a harmonious system. *Decker*, 426 N.E.2d at 153. *See also Simmons v. State*, 773 N.E.2d 823, 826 (Ind.Ct.App.2002), *trans. denied.* In this respect, when two statutes on the same subject must be construed together, the court should attempt to give effect to both; however, where the two are repugnant in any of their provisions, then the latter statute will control and operate to repeal the former to the extent of the repugnancy. *Decker*, 426 N.E.2d at 153; *Simmons*, 773 N.E.2d at 826.

■ Here, the State argues that the recodification of the eminent domain act in 1990 and 2002 was an expression of our legislature to overturn *Decker*. Specifically, the State contends that the statutory

obligation to make a good faith offer and the condition precedent established in *Decker* have been eviscerated "as a result of subsequent legislative action." *See Appellee's Brief* at 12. We disagree and find the rules of statutory construction pertaining to recent and specific manifestations of the legislature's intent are particularly applicable where, as in the instant case, the legislature previously amended the statute in question to add specific new sections without expressly repealing older, more general expressions of its intention. Accordingly, we hold the State is required to employ the particular eminent domain procedures expressed in IC 32–24–1–5, including the obligation to make a good faith offer as expressed in subsection (c). Such obligation necessarily requires the State not only to allege an offer was made, but also when a timely objection is interposed, to prove such offer was tendered in the manner anticipated by the statute. It may not be presumed our legislature intended the illogical or absurd result of requiring the State to "make" an offer to purchase, while relieving it of the obligation of establishing such offer as a condition precedent to condemnation. *See Decker*, 426 N.E.2d at 154.

■ As this court has previously held, a good faith offer anticipates an offer based on the fair market value of the property in question. *Unger v. Indiana & Michigan Electric Co.*, 420 N.E.2d 1250, 1257 (Ind.Ct.App.1981). We also believe, however, the obligation thus imposed on the State by our legislature is not an unduly burdensome one, since it is settled law that the condemnor is "obligated only to tender a reasonable offer honestly and in good faith," and "the mere fact there exists some disagreement or conflict in opinion as to fair market value will be insufficient to sustain an objection to the complaint in condemnation." *Unger*, 420 N.E.2d at 1259–60. Thus, the issue, if raised, of whether a good faith offer was

made may customarily be disposed of by the State by a request for summary judgment accompanied by an affidavit representing that the offer was based on an appraisal by a qualified appraiser, with a copy of the appraisal attached to such affidavit. *Decker,* 426 N.E.2d at 154.

 In the instant case, Burd contends that the offer made by the State was not made in good faith because the State's request for summary judgment was not accompanied by the appraisers' affidavits with copies of the appraisals attached to such affidavits. The State, on the other hand, claims that the affidavits of the appraisers and its rejected uniform offer satisfied its burden to make a good faith offer to purchase Burd's property prior to filing a condemnation action. The trial court erroneously granted summary judgment in favor of the State after concluding, as a matter of law, that the State, through INDOT, was not required to prove that an offer was made prior to filing a condemnation action. The evidence presented before us shows that the appraisals were not attached to the affidavits of the appraisers. Therefore, we reverse the trial court's order granting summary judgment in favor of the State. We remand this case to the trial court with instructions to determine, by summary proceedings or after evidentiary hearings, whether a good faith offer based on fair market value was made by the State for all of the land appropriated from Burd.[7]

## II. Motion to Compel

 Burd argues that the trial court abused its discretion when it denied its motion to compel responses to discovery requests. The standard of review in discovery matters is an abuse of discretion. *R.R. Donnelley & Sons Co. v. North Texas Steel Co., Inc.,* 752 N.E.2d 112, 133 (Ind. Ct.App.2001), *trans. denied; Old Indiana Ltd. Liab. Co. v. Montano ex rel. Montano,* 732 N.E.2d 179, 183 (Ind.Ct.App.2000), *trans. denied.* An abuse of discretion occurs when a trial court reaches a conclusion that is against logic and the natural inferences that can be drawn from the facts and circumstances before the trial court. *R.R. Donnelley,* 752 N.E.2d at 133.

 As shown above, we hold that the State was required to make a good faith offer. Because the trial court's denial of Burd's motion to compel responses to its discovery requests was based on its contrary holding, we reverse the trial court's order denying Burd's motion to compel responses to discovery requests. In general, parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter in the pending action. Ind. Trial Rule 26(B). The information sought by Burd in its discovery responses is relevant to the issue of whether a good faith offer was made by the State prior to filing the condemnation action. As such, we reverse the trial court's denial of Burd's motion to compel because the information sought by Burd is discoverable under T.R. 26(B).

Reversed and remanded.

FRIEDLANDER, J., and BARNES, J., concur.

---

7. We note that it is unclear whether a right-of-way existed prior to the condemnation action or whether this portion of the appropriated land must also be included when determining the fair marker value of the property. Therefore, on remand, the trial court must determine whether the State already owns the apparent right-of-way or whether this portion of the appropriated land must be included when determining the fair market value of the property.