ATTORNEYS FOR APPELLANT
Joseph W. Hammes
Tabbert Hahn Earnest & Weddle, LLP
Indianapolis, Indiana

Karl L. Mulvaney
Nana Quay-Smith
Candace L. Sage
Bingham McHale, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Steve Carter
Attorney General of Indiana

David L. Steiner
Deputy Attorney General
Indianapolis, Indiana

## In the
## Indiana Supreme Court

No. 49S02-0411-CV-476

BURD MANAGEMENT, LLC,

*Appellant (Defendant below)*,

v.

STATE OF INDIANA,

*Appellee (Plaintiff below)*.

Appeal from the Marion Superior Court, No. 49D12-210-PL-1827
The Honorable Robyn Moberly, Judge

On Petition To Transfer from the Indiana Court of Appeals, No. 49A02-307-CV-572

**June 28, 2005**

**Sullivan, Justice.**

A property owner whose land is being taken for a highway project argues that the state transportation department must, to prevail in condemnation proceedings, prove that it made a good-faith offer to purchase the property prior to filing suit. We hold that Indiana Code Section

32-24-1-13(a) exempts the transportation department from any such requirement, thereby overruling <u>Decker v. State</u>, 426 N.E.2d 151 (Ind. Ct. App. 1981).

## Background

The Indiana Department of Transportation ("INDOT") is in the process of improving public highway U.S. 36 in Marion County, also known as Pendleton Pike. Burd Management, LLC ("Burd"), owns real estate in Marion County adjacent to Pendleton Pike. INDOT determined that it needed to appropriate part of Burd's real estate for the public purpose of improving the highway. The State obtained two appraisals for the real estate. Based on those appraisals, the State, through INDOT, presented a Uniform Land Acquisition Offer to purchase Burd's real estate for $57,950. Burd rejected the offer, and the State initiated a condemnation action. Burd filed objections to the appropriation proceedings, claiming that: (1) the State failed to comply with the procedures for appropriating Burd's real estate; (2) the State failed to make a good-faith offer or effort to purchase Burd's property; and (3) the State improperly alleged in its Complaint that its highway improvement project benefits Burd's remaining property after the condemnation. Burd also served the State with discovery requests. The State objected to all requests, except one interrogatory and one admission, and filed a motion for summary judgment on the issue of a good-faith offer requirement. Burd then filed a motion to compel responses to its discovery requests.

The trial court granted the State's motion for summary judgment, determining that the State was not required to prove that an offer to purchase was made prior to filing the condemnation action. The trial court also denied Burd's motion to compel discovery requests and issued a protective order shielding the State's appraisals from discovery.

The Court of Appeals, finding that the State was required to make a good-faith offer, reversed the trial court's order granting summary judgment in favor of the State and remanded this case to the trial court with instructions to determine whether a good-faith offer had been made by the State for all of the land appropriated from Burd. The State petitioned to, and we granted, transfer. <u>Burd Management v. State</u>, 822 N.E.2d 981 (2004) (mem.).

2

## Discussion

## I

The central issue before this Court is whether there is a conflict between two statutes governing the condemnation of property in Indiana. The first statute, which Burd argues is controlling, provides:

> As a condition precedent to filing a complaint in condemnation, . . . a condemnor may enter upon the property as provided in this chapter and must, at least thirty (30) days before filing a complaint, make an offer to purchase the property in the form prescribed in subsection (c).

Ind. Code § 32-24-1-5(a) (2004) (emphasis added) ("Section 5"). A "condemnor" for the purposes of this statute is defined as "any person authorized by Indiana law to exercise the power of eminent domain." Ind. Code § 32-24-1-1.

The second statute, relied on by the State, provides:

> The Indiana department of transportation or any state board, agency, or commission that succeeds the department in respect to the duties to locate, relocate, construct, reconstruct, repair, or maintain the public highways of Indiana, having the right to exercise the power of eminent domain for the public use, in its action for condemnation is not required to prove that an offer of purchase was made to the property owner in an action under this article.

Ind. Code § 32-24-1-13(a) (emphasis added) ("Section 13").

Here is the history of these two statutes. In 1905, the Indiana Legislature enacted a provision as part of the general statute governing condemnation (the "Condemnation Act") that provided in part, "[A]ny person, corporation, or other body having the right to exercise the power of eminent domain" must, "[b]efore proceeding to condemn, . . . make an effort to purchase" the land. 1905 Ind. Acts 48, § 1 at 59. This Court, in State v. Pollitt, held that the language of this

3

statute was broad enough to include the State and any of its administrative agencies. 220 Ind. 593, 600, 45 N.E.2d 480, 482 (1942).

In 1961, without expressly amending the 1905 Condemnation Act, the Legislature added a provision to the Indiana Code, which provided that the State Highway Department "shall not be required to prove that an offer to purchase was made to the land owner." 1961 Ind. Acts 317, § 2 at 887; Ind. Code § 32-11-1-9 (1961) (now codified as Section 13). This Court in Sadlier v. State interpreted this language to mean that the State, as legal representative for the Highway Department, is exempted from the requirement that condemnors make an offer to purchase land before proceeding to condemn. 252 Ind. 525, 529, 251 N.E.2d 27, 29 (1969).

In 1977, the Condemnation Act was amended by the addition of a new code section, which provided, "As a condition precedent to filing a complaint in condemnation, . . . a condemnor may enter upon the property or interest therein as provided in this chapter, and shall at least thirty (30) days prior to filing such complaint make an offer to purchase the property . . . ." Ind. Code § 32-11-1-2.1(b) (1977) (now codified as Section 5). The Legislature defined "condemnor" as "any person or entity authorized by this state to exercise the power of eminent domain." Ind. Code § 32-11-1-2.1(a)(2) (1977) (now codified as Ind. Code § 32-24-1-1 (2004)).

In 1981, the Indiana Court of Appeals in Decker v. State found that the statutes were "repugnant in . . . their provisions," and interpreted them together to mandate that the State make, as a condition precedent to filing a condemnation action, a good-faith offer to purchase. 426 N.E.2d 151, 153 (Ind. Ct. App. 1981). The court reasoned that the obligation to make a good-faith offer "necessarily requires the State not only to allege an offer was made, but also when a timely objection is interposed, to prove such offer was tendered in the manner anticipated by the statute." Id. at 154 (emphasis in original). The court went on to say that "[i]t may not be presumed the Legislature intended the illogical or absurd result of requiring the State to 'make' an offer to purchase, while relieving it of the obligation of establishing such offer as a condition precedent to condemnation." Id. Transfer was not sought in Decker, and we have never had occasion to visit its holding.

4

In the present case, the Court of Appeals, following <u>Decker</u>, held that INDOT must prove that it made a good-faith offer before condemning Burd Management's real estate. The State argues that the Court of Appeals erred in following <u>Decker</u> because recodifications made subsequent to <u>Decker</u> revitalize Section 5 and repeal Section 13, thus eliminating the requirement for the State to prove that it made a good-faith offer. We will address each argument in turn.

**II**

**A**

Burd argues that "[t]he Legislative preference for the expeditious resolution of State eminent domain actions does not—and cannot—trump Burd's right to object to the taking of its property." Br. in Response to Pet. for Reh'g at 4. Burd goes on to argue that "Burd's procedural due process rights require an opportunity to contest the legality of the State's action to take its property." <u>Id.</u> (citing <u>Cemetery Co. v. Warren Sch. Twp. of Marion County</u>, 236 Ind. 171, 178, 139 N.E.2d 538, 541 (Ind. 1957).

Burd cites <u>Cemetery Co.</u> to support this proposition. There this Court said:

> At some place in the proceedings, and by some method the landowner is entitled to contest the legality of the condemnation proceedings, <u>and question the authority under which the attempt is being made</u> to take his property including the issue of whether or not it is a private or public purpose.

<u>Cemetery Co.</u>, 236 Ind. at 178, 139 N.E.2d at 541 (emphasis added). However, the Court in <u>Cemetery Co.</u> was discussing the right to challenge the legality of the condemnation proceedings in the context of whether the condemnor had the legislative authority to condemn the property in dispute. Burd is not challenging INDOT's authority to condemn its property for the improvement of Pendleton Pike.[1] Instead, Burd is contesting whether the State has to prove that it made a good-faith offer for the property. Therefore, Burd's reliance upon <u>Cemetery Co.</u> is misplaced.

---

[1] Section 13, <u>supra</u>, confirms INDOT's legislative authority to condemn land for public use.

5

**B**

The State contended that because the Legislature recodified the Indiana Eminent Domain Act after the <u>Decker</u> decision was handed down,[2] the court's holding in <u>Decker</u> should no longer apply. The State argued, "[T]he Indiana General Assembly's amendment of a statute that an appellate court decided was implicitly repealed must be construed as a response to that appellate decision. Further, it is simply absurd that the Indiana General Assembly would amend a statute that it intended to repeal." Br. of Appellee at 14.

We disagree with the State's explanation of the effect of the General Assembly's recodification. According to the Legislature, the recodification of the statutes did not act as a response to an appellate decision.

> The purpose of the recodification act of the 2002 regular session of the general assembly is to recodify prior property law in a style that is clear, concise, and easy to interpret and apply. Except to the extent that:
>> (1) the recodification act of the 2002 regular session of the general assembly is amended to reflect the changes made in a provision of another bill that adds to, amends, or repeals a provision in the recodification act of the 2002 regular session of the general assembly; or

---

[2] In 1990, the Indiana General Assembly amended Indiana Code Section 32-11-1-9(a). The amendments are as follows:

> In all proceedings by the ~~state~~ Indiana department of ~~highways~~ transportation, or any state board, agency, or commission which has succeeded ~~said~~ the department in respect to the duties ~~duly charged by law~~ to locate, relocate, construct, reconstruct, repair, or maintain the public highways of ~~the state of~~ Indiana, having the right to exercise the power of eminent domain for ~~such~~ the public use, the ~~said~~ department in its action for condemnation ~~shall~~ is not ~~be~~ required to prove that an offer of purchase was made to the landowner.

1990 Ind. Acts, Pub. L. No. 18, § 287 at 916-17. Then in 2002, the General Assembly recodified the Indiana Domain Act, including Indiana Code Section 32-11-1-9 and its 1990 amendments, at Indiana Code Sections 32-24-1-1 through 32-24-6-2. The relevant recodified statute continues to provide that "[t]he Indiana department of transportation . . . is not required to prove that an offer of purchase was made to the property owner in an action under this article." Ind. Code § 32-24-1-13(a) (2004).

> (2) the minutes of meetings of the code revision commission during 2001 expressly indicate a different purpose;
> <u>the substantive operation and effect of the prior property law continue uninterrupted as if the recodification act of the 2002 regular session of the general assembly had not been enacted.</u>

Ind. Code § 32-16-1-2 (2004) (emphasis added).  Therefore, absent an amendment or express indication of the code revision committee, the recodification had no effect on the statutes at issue here.

## C

Though we disagree with the State's view on the effects of the post-<u>Decker</u> recodifications, we nonetheless find that the <u>Decker</u> court erred in holding that the two statutes at issue were repugnant in their provisions.  Sections 5 and 13 can, and should, be read in harmony with one another.[3]

As already discussed, the Legislature has given the State authority to condemn the land; the State need only give just compensation.  And the Legislature has an interest in expediting the process of determining how much compensation is "just."  So, as the State suggests in its brief, it would be sound policy for the Legislature—in an effort to divert parties from resorting to timely and costly litigation—to require the State to make a good-faith offer.  If the State makes an offer that the landowner finds acceptable, the time and resources that would otherwise be consumed in litigation would be saved.  Such policy encourages the State to present an offer that might well be acceptable to a landowner.

And it would also be sound policy for the Legislature to spare the State the burden of proving that it made a good-faith offer.  Proving that an offer was made in good faith might well be costly and time consuming.  In any event, by the time that proof would be required, the parties

---

[3] "In construing a statute our main objective is to determine, give effect, and implement the intent of the legislature."  <u>Neal v. DeKalb County Div. of Family & Children</u>, 796 N.E.2d 280, 284 (Ind. 2003) (citing <u>Melrose v. Capitol City Motor Lodge, Inc.</u>, 705 N.E.2d 985, 989 (Ind. 1998)).  Also, "[w]here two or more statutes contradict each other or are in apparent conflict, we attempt to construe them in harmony."  <u>Id.</u> (citing <u>Purcell v. State</u>, 721 N.E.2d 220, 223 (Ind. 1999)).

will already be before a court whose main purpose is to decide what compensation is "just." At that stage, the amount and character of the initial offer is irrelevant.

So long as two statutes can be read in harmony with one another, we presume that the Legislature intended for them both to have effect.[4] See Poehlman v. Feferman, 717 N.E.2d 578, 582 (Ind. 1999) ("[W]e recognize a strong presumption that when the legislature enacted a particular piece of legislation, it was aware of existing statutes relating to the same subject.") (citing Glick v. Dep't of Commerce, 180 Ind. Ct. App. 12, 18, 387 N.E.2d 74, 78 (1979)). We therefore disapprove the Court of Appeals's decision in Decker, give effect to both Sections 5 and 13, and hold that the State need not prove that it made a good-faith offer.

**Conclusion**

Though Section 5 required INDOT to make a good-faith offer to Burd Management, Section 13 dictates that INDOT was not required to prove in subsequent condemnation litigation that it made such an offer. The trial court was correct to deny Burd's motion to compel responses to its discovery requests and to grant summary judgment in favor of the State. We affirm the trial court.

Shepard, C.J., and Boehm and Rucker, JJ., concur. Dickson, J., dissents, believing Decker v. State, 426 N.E.2d 151 (Ind. Ct. App. 1981), to have been correctly decided.

---

[4] We see little basis for finding legislative acquiescence to the Decker decision. No appellate court has subsequently cited Decker for the proposition that the State must prove that it made a good-faith offer before condemning property. There is no evidence that either landowners or condemnors have relied on Decker. And, Burd does not make this argument.