**SIMON PROPERTY GROUP, L.P. and Simon Property Group, Inc., Appellants/Cross–Appellees/Plaintiffs,**

v.

**BRANDT CONSTRUCTION, INC., Appellee/Cross–Appellant/Defendant.**

No. 49A02–0403–CV–227.

Court of Appeals of Indiana.

July 15, 2005.

Donald D. Levenhagen, Cohen & Malad, LLP, Indianapolis, for Appellants.

Edward R. Hannon, Christopher C.T. Stephen, Scott A. Kreider, Hannon Roop & Hutton, P.C., Indianapolis, for Appellee.

## OPINION

BAKER, Judge.

Appellant/cross-appellee/plaintiff Simon Property Group, L.P. (Landlord) appeals the denial of its motion to correct error. Specifically, it alleges that the jury's damages award on Landlord's negligence claim against appellee/cross-appellant/defendant Brandt Construction, Inc. (Brandt) was inadequate as a matter of law and that the

trial court erred in denying its request for prejudgment interest.

Appellant/cross-appellee/plaintiff Simon Property Group, Inc. (General Partner), appeals the denial of its motion for partial judgment on the evidence and motion to correct error. Specifically, it alleges that all of the elements of its breach of contract claim that it pursued against Brandt were conclusively established as a matter of law.

Brandt cross-appeals the jury's verdict in favor of Landlord on Landlord's negligence claim. Specifically, Brandt argues that it did not owe the requisite duty as a matter of law.

Finding that the trial court erred in part in denying Landlord's and General Partner's motions and that the jury's verdict on Landlord's negligence claim was proper, we affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

## FACTS

Landlord is the owner and landlord of the Greenwood Plus Shopping Center (Shopping Center) in Greenwood. General Partner is Landlord's general partner. Best Buy Stores, L.P. (Best Buy) operated a retail store at the Shopping Center pursuant to a lease with Landlord.

In 1996, Landlord and Best Buy amended the lease to include provisions enabling Landlord to renovate and expand the Best Buy store (the Project). General Partner contracted with, among others, Brandt (the Contract) for a portion of the work including roofing and "selective demolition." The Project specifications with respect to "selective demolition" were incorporated by reference into the Contract and required Brandt to

[p]rovide temporary weather protection during the interval between demolition and removal of existing construction on exterior surfaces, and installation of new construction to insure that no water leakage or damage occurs to structure or interior areas of existing building. Appellant's App. p. 129–30.

General Partner also entered into contracts with Rosemead Construction (Rosemead), as its construction manager, and Ferguson Steel (Ferguson), as steel contractor. Rosemead supervised the Project and instructed each contractor. The individual contractors had no authority or ability to dictate the actions of any other contractor. Additionally, Rosemead was responsible for constructing any required temporary partitions, barricades, or enclosures. Rosemead was able to instruct other subcontractors to perform that responsibility for additional payment, but in doing so would reduce its profits.

As a part of the same project and Contract, in May 1996, Landlord undertook a renovation (Kohl's renovation) of Kohl's, another store in the Shopping Center. As part of the Kohl's renovation, Brandt cut holes in the store's existing back wall to allow for the installation of new steel components by Ferguson. Following the steel installation, Rosemead contacted Brandt to request that it install a temporary enclosure over the hole to protect against weather and dust until the new roof was completed. Brandt erected an enclosure over the hole and submitted an itemized bill to Rosemead for payment. Upon receipt of the work order, Rosemead paid Brandt from the money allotted to Rosemead as part of the contract that was set aside for temporary enclosures.

In July 1996, Brandt removed a portion of the roof on Best Buy's existing back wall, leaving the store's interior exposed to the weather. Unlike the Kohl's renovation, Rosemead did not request that Brandt erect an enclosure to protect against weather and dust until the new

roof was completed. Brandt admits that it did not cover the opening at any time. On July 18, 1996, there was a rainstorm that caused a deluge of water to pour into the uncovered opening in Best Buy's roof. The water damaged a large quantity of Best Buy's products in its stockroom and on the retail floor. Additionally, a "sizeable area" of the store was covered in standing water. Appellant's Br. p. 5.

Best Buy retained a salvage company to recover the damaged store property. Mark Ruddy, a personal property appraiser, handled the salvage efforts. Ruddy's appraisal of the fair market value loss to the property was $86,874.45. Best Buy asserted a claim for that amount against Landlord and General Partner, and Landlord or General Partner settled the claim with Best Buy on May 15, 1997, for $57,289.73. As part of the settlement, Best Buy assigned its tort claim against Brandt to Landlord.

The Contract also provided that

[t]he Contractor shall indemnify and hold harmless the Owner and their agents and employees from and against all claims, damages, losses and expenses including attorneys' fees arising out of or resulting from the performance of the Work, provided that any such claim, damage, loss or expense (1) is attributable to ... injury or destruction of tangible property (other than the Work itself) including the loss of use therefrom, and (2) is caused in whole or in part by any negligent act or omission of the Contractor, any Subcontractor, anyone directly or indirectly employed by any of them or anyone for whose acts any of them may be liable, regardless of whether or not it is caused in part by a party indemnified hereunder.

Appellant's App. p. 106. Brandt stipulated that it refused a demand to indemnify General Partner based on the settlement.

On April 9, 1998, Landlord and General Partner filed a complaint against Brandt wherein Landlord brought a negligence claim for damage to personal property and General Partner brought a claim for breach of contract based upon the above indemnity provision.[1] On December 27, 2001, Brandt filed a motion for partial summary judgment seeking a pretrial determination of the measure of damages applicable to Landlord's negligence claim and alleging that the damages were limited to the wholesale/replacement cost of the damaged property. Landlord and General Partner filed a cross-motion for summary judgment on the same issue, contending that the correct measure of damages was the difference in fair market value before and after the loss. On May 9, 2002, the trial court denied Brandt's motion, granted the appellants' cross-motion, and ordered that the applicable measure of damages at trial for personal property damage would be "the fair market value of the personal property damaged less any salvage recovery." Appellant's App. p. 59.

The trial court later advised the parties that Brandt would be permitted to introduce evidence at trial of the wholesale cost of the damaged goods notwithstanding its previous partial summary judgment on the proper measure of damages. Eventually, in the interest of expediency, the parties agreed that Brandt would be permitted to tell the jury that $57,289.73 was the wholesale cost of the damaged property. The parties also agreed that this statement would be made without prejudice to the appellants' overruled and continuing rele-

---

1. The complaint was amended twice, with the second amended complaint being filed on February 12, 2003.

vance objection based on the prior partial summary judgment on the proper measure of damages.

At the parties' pretrial conference on December 1, 2003, they agreed that issues involving prejudgment interest on both claims would be withdrawn from the jury and determined by the trial court after the trial's conclusion. Beginning on January 6, 2004, a jury trial was held.

At the close of all the evidence, General Partner moved for partial judgment on the evidence to withdraw the contract claim from the jury's purview with the exception of the issue of Brandt's fault. Specifically, General Partner contended that since the Contract's indemnity provision was enforceable and the other elements of the claim were undisputed, the trial court could rule on the contract claim as a matter of law after the jury returned its verdict on the negligence claim and determined the issue of Brandt's fault. The trial court denied General Partner's motion.

On January 8, 2004, the jury returned a verdict in favor of Landlord on the negligence claim and in favor of Brandt on the breach of contract claim. The jury's finding of total damages on the negligence claim was $57,000, and the jury found Brandt to be 50% at fault. Accordingly, the jury awarded Landlord $28,500 on its negligence claim.

On January 29, 2004, the trial court conducted a hearing on the deferred issue of prejudgment interest on the negligence award. The trial court denied Landlord's request for prejudgment interest on that same day.

On February 9, 2004, the appellants filed a motion to correct error. Landlord asserted that the damages award was inadequate as a matter of law for two reasons. First, Landlord argued that the total dam-

ages finding of $57,000 was contrary to law because it reflected the wholesale cost of the damaged property rather than the difference in fair market value of the damaged property before and after the loss. Second, Landlord contended that the trial court erroneously denied prejudgment interest because the damages were established by a known standard—fair market value—and therefore triggered a mandatory award of prejudgment interest.

General Partner argued that the judgment for Brandt on the breach of contract claim was contrary to law. In particular, General Partner argued that since the jury found Brandt to be negligent, judgment in General Partner's favor based upon the Contract's indemnity provision was required as a matter of law because the remaining elements of the claim were established without dispute at trial. The trial court denied appellants' motion to correct error on February 11, 2004.

General Partner now appeals the denial of its motion for judgment on the evidence, Landlord and General Partner appeal the denial of their motion to correct error, and Brandt cross-appeals the verdict in favor of Landlord on Landlord's negligence claim.

## DISCUSSION AND DECISION

### I. Cross–Appeal

Brandt cross-appeals the verdict in favor of Landlord on Landlord's negligence claim. Specifically, Brandt contends that it did not owe a duty to Best Buy as a matter of law. Although Brandt's brief is somewhat inarticulate on the issue, it seems to be arguing that because it allegedly fulfilled its contractual duties towards General Partner, it cannot be found to have owed—and breached—a duty to Best Buy.[2]

2. Brandt's cross-appeal focuses first on General Partner's contract claim, and Brandt

■ As we consider these arguments, we note that while a jury's verdict may be overturned if it is legally or logically inconsistent, contradictory, or repugnant, we will indulge every reasonable presumption in favor of the legality of the verdict. *Salcedo v. Toepp,* 696 N.E.2d 426, 435 (Ind.Ct. App.1998). Moreover, we will sustain the judgment on any theory consistent with the evidence and will neither reweigh the evidence nor consider the credibility of witnesses. *Id.*

Brandt argues that whether it owed Best Buy a duty of care should be evaluated in the context of three factors set forth by our supreme court in *Webb v. Jarvis,* 575 N.E.2d 992, 995 (Ind.1991):(1) the relationship of the parties; (2) the reasonable foreseeability of harm to the injured person; and (3) public policy concerns.

■ Landlord counters by pointing out that we need not resort to the *Webb* test for imposition of a duty if there is well-settled authority imposing a duty under the circumstances. *N. Ind. Pub. Serv. Co. v. Sharp,* 790 N.E.2d 462, 465 (Ind. 2003). To that end, we note the well-established rule that "[i]f a contract affirmatively evinces an intent to assume a duty of care, actionable negligence may be predicated upon the contractual duty." *Williams v. R.H. Marlin, Inc.,* 656 N.E.2d 1145, 1155 (Ind.Ct.App.1995). To determine whether a party is charged with a duty of care under a contract, we look to the contract as a whole by examining all of its provisions. *Merrill v. Knauf Fiber*

*Glass GmbH,* 771 N.E.2d 1258, 1268 (Ind. Ct.App.2002), *trans. denied.* Additionally, we emphasize that a contracting party may, by virtue of the contract, assume a duty of care to third parties. *Williams,* 656 N.E.2d at 1155.

■ In this case, the Contract contains the following provision regarding protection of persons and property: "[Brandt] shall ... provide all reasonable protection to prevent damage, injury or loss to ... (3) other property at the site or adjacent thereto." Appellant's App. p. 108. Moreover, Brandt admits that the hole in the Best Buy roof was created by Brandt as part of its selective demolition work. Appellee's Br. p. 13. The project specifications with respect to selective demolition were incorporated by reference into the Contract, Appellant's App. p. 105, and included among those specifications is a provision requiring Brandt to:

> [p]rovide temporary weather protection during interval between demolition and removal or existing construction on exterior surfaces, and installation of new construction to insure that no water leakage or damage occurs to structure or interior areas of existing building.

Appellant's App. p. 129.[3]

It is apparent to us when construing the Contract in its entirety that Brandt assumed a duty to prevent damage from occurring to the Best Buy store to the best of its ability. According to the Contract, this duty extended not only to the building

---

seems to include the jury verdict in its own favor as a point of error. We will give Brandt the benefit of the doubt and assume that it included this section to show why it did not have a duty to Best Buy and to rebut General Partner's arguments that the verdict in Brandt's favor on the contract claim was error.

**3.** Brandt contends that because the jury determined that Brandt did not breach the Contract, it necessarily follows that it did not have a duty to cover the hole. But the only issue before the jury as to the Contract was whether Brandt breached the *indemnity provision,* not whether it breached any provision regarding covering the hole. Thus, the jury's verdict on the Contract claim bears no relevance to this issue whatsoever.

itself but also to the property within it. Moreover, Brandt was specifically required to install temporary weather protection during the relevant period of time in this case. Accordingly, we conclude that as a result of its contractual obligations, Brandt assumed a duty of care to Best Buy that gives rise to an actionable claim of negligence.

As to whether Brandt breached this duty, we note that after Brandt opened the hole in the Best Buy roof, two steps needed to be taken to close it. First, Ferguson undertook steel joist and decking work, and Landlord admits that Brandt had no part of this step of construction. Second, Brandt stepped back in to repair the roof itself. Ferguson completed its step by 3:00 p.m. on the day before the water damage occurred, and the rainstorm occurred at approximately 1:00 a.m. the following morning.[4] As of 3:00 p.m., therefore, Brandt had regained control of the construction site and was able to fulfill its contractual duty to install temporary weather protection over the hole in the roof. It did not do so, and the water damage resulted from its failure.

Brandt argues that it did not have control over the construction site at the time of the damage, but the record shows that as of 3:00 p.m. on the day prior to the storm, it had regained control. Moreover, the selective demolition provision requires Brandt to cover the hole irrespective of who else was working in the area.

Brandt also contends that: (1) protection for the hole constituted a "temporary enclosure" for which Rosemead, not Brandt, was responsible, and (2) it had no duty to protect the hole because when it performed the weather protection work at Kohl's, it was specifically requested and paid extra to do so. There was conflicting evidence as to both of these issues at trial, and the jury found that the evidence weighed more heavily in Landlord's favor. Brandt is asking us to reweigh this evidence, which our standard of review does not permit.

We conclude, therefore, that pursuant to the Contract, Brandt assumed a duty of care to Best Buy that gave rise to an actionable claim of negligence. Landlord proved to the jury that Brandt breached that duty, which proximately caused the property damage at issue. Accordingly, the jury properly found for Landlord on its negligence claim.

## II. Appeal

General Partner appeals the denial of its motion for judgment on the evidence, and Landlord and General Partner appeal the denial of their motion to correct errors. Specifically, they contend that the trial court erred in: (1) permitting the jury to use the wholesale/replacement cost of the damaged property as a measure of damages on Landlord's negligence claim; (2) refusing to award Landlord prejudgment interest on its negligence claim; and (3) denying General Partner's request to find in its favor on the breach of contract claim as a matter of law.

To determine whether the trial court properly denied a motion to correct error asserting inadequate damages, we must determine whether the jury's damages finding is inadequate and outside the scope of the evidence. *MAPCO Coal, Inc. v. Godwin,* 786 N.E.2d 769, 778 (Ind.Ct. App.2003).

Additionally, in reviewing the trial court's ruling on a motion for judgment on the evidence, we employ the same stan-

---

4. A meteorologist testified at great length at trial concerning the weather forecast of immi-

nent rainstorms at the time in question. Amended Tr. at p. 138–39.

dard of review as the trial court. *City of Carmel v. Leeper,* 805 N.E.2d 389, 392 (Ind.Ct.App.2004), *trans. denied.* A motion for judgment on the evidence is governed by Indiana Trial Rule 50(A), which provides that:

> [w]here all or some of the issues in a case tried before a jury or an advisory jury are not supported by sufficient evidence, or a verdict thereon is clearly erroneous as contrary to the evidence because the evidence is insufficient to support it, the court shall withdraw such issues from the jury and enter judgment thereon or shall enter judgment thereon notwithstanding a verdict.

The court looks only to the evidence and the reasonable inferences drawn most favorable to the nonmoving party, and the motion should be granted only where there is no substantial evidence supporting an essential issue in the case. *Illiana Surgery & Med. Ctr., LLC v. STG Funding, Inc.,* 824 N.E.2d 388, 401 (Ind.Ct.App. 2005).

### A. Negligence Claim

#### 1. Proper Measure of Damages

Landlord contends that the trial court erred in permitting the jury to consider the wholesale/replacement cost of the damaged property as the measure of damages on its negligence claim. In particular, it contends that the trial court rejected that measure of damages when it granted partial summary judgment in Landlord's favor and held that the proper measure of damages would be "the fair market value of the personal property damaged less any salvage recovery." Appellant's App. p. 59.

In reviewing a claim that a damages award is inadequate, we "must not substitute our idea of a proper award for that of the jury. Further, we will not reverse a damage award so long as the

damages are within the scope of the evidence." *MAPCO Coal, Inc.,* 786 N.E.2d at 778.

In addition to the trial court's partial summary judgment ruling in its favor, Landlord points to the following jury instruction regarding damages:

> [t]he personal property at issue in this case is the water damaged goods in the Best Buy store at the time of the occurrence in question.

> When personal property has been damaged, but not destroyed, the measure of damages is the loss of fair market value, that is, the difference between the fair market value of the property before the damage and the fair market value of the property after the damage.

> "Fair market value" means the price a willing seller will accept from a willing buyer when neither party is compelled to do so.

Appellant's App. p. 39. Notwithstanding its partial summary judgment ruling and jury instruction that fair market value was the proper measure of damages, the trial court permitted Best Buy to introduce evidence that the wholesale cost of the damaged property was $57,289.73. Although the jury returned a verdict for Landlord, it awarded damages in the amount of $57,-000—approximate wholesale cost—instead of $86,874.45—fair market value.

We note initially that both parties spend a great deal of time in their briefs debating whether fair market value or wholesale/replacement cost of the damaged property is the appropriate measure of damages with regard to business inventory. But the trial court granted partial summary judgment in favor of Landlord and instructed the jury that fair market value was the proper measure of damages, and Brandt does not cross-appeal either action. Accordingly, since the trial court held, Landlord agrees, and Brandt does

not cross-appeal the determination that fair market value is the appropriate measure of damages in this case, we consider the issue to be conclusively determined for this case and these parties.

■ Having determined the appropriate measure of damages, we must next determine whether the jury's damages award was proper. At trial, the only evidence as to the damaged property's loss in fair market value was in the amount of $86,874.45. An experienced personal property appraiser handled the salvage efforts and appraised the fair market value loss to the property, net of salvage proceeds, in that amount. Tr. p. 276.

Brandt offered no evidence to the contrary of the fair market value of the loss, but it argues that the compromise settlement of Best Buy's legal claim in the amount of $57,289.79 supports the jury's total damages finding of $57,000. The facts regarding the settlement are not in dispute: Best Buy sent a $86,874.45 claim for damaged property to General Partner; Landlord or General Partner compromised and settled the claim for $57,289.73; and as part of the settlement, Best Buy assigned its tort claim against Brandt to Landlord. According to Brandt, the jury could have reasonably concluded that because Best Buy settled its claim for approximately $57,000, the property was valued at that amount.

Brandt's contention is problematic for a number of reasons. First, evidence of the Best Buy settlement related only to General Partner's indemnity contract claim— its only purpose was to lay the factual predicate for reimbursement under the Contract's indemnity provision and had no bearing whatsoever on Landlord's negli-gence claim. The jury was instructed that the rights of General Partner and Landlord are separate and distinct, as are the negligence and breach of contract claims. Tr. p. 352. But apparently, the jury improperly considered the evidence regarding the settlement amount in awarding damages to Landlord on its negligence claim.[5]

Second, evidence of a compromise settlement amount is not probative of the fair market value of the damaged property. Indeed, the jurors were explicitly told that the settlement amount was not the fair market value of the property: they were told, over objection, that it was the wholesale cost of the property. Appellant's App. p. 52–53, 195.

Finally, Indiana Evidence Rule 408 expresses our public policy that a compromise settlement of a legal claim is not probative of the amount of recoverable damages in a civil case. Here, the settlement payment was not for the goods themselves; to the contrary, it was for, among other things, a compromise and a release of Best Buy's $86,874.45 claim against Landlord for the property damage. Brandt is not permitted to use the settlement amount as evidence of the value of the claim. For the foregoing reasons, we conclude that evidence of the settlement amount is not probative of the fair market value of the damaged property. Accordingly, the jury's damages award of $57,000 was not within the scope of the evidence and the trial court improperly denied Landlord's motion to correct error.

■ Brandt raises two additional arguments. First, it contends that Landlord is a subrogee, as opposed to an assignee, of

5. Landlord and General Partner filed a pretrial motion to sever the indemnity claim and again requested that the claim be withdrawn from the jury's purview in a motion for par-tial judgment on the evidence to avoid precisely this confusion. The trial court denied both motions.

Best Buy. If Landlord is a mere subrogee, it would be entitled to recover no more than what it paid to Best Buy. *See Bituminous Fire & Marine Ins. Co. v. Culligan Fyrprotexion, Inc.,* 437 N.E.2d 1360, 1371 (Ind.Ct.App.1982). An assignee, on the other hand, acquires the same rights as those possessed by the assignor. *Essex v. Ryan,* 446 N.E.2d 368, 374 (Ind.Ct.App. 1983).

■ Here, Best Buy assigned *"all* of its legal rights and remedies against Brandt Construction which have arisen or may arise as a result of the property damage .... " Appellant's App. p. 132 (emphasis added). In contrast to typical subrogation provisions in insurance policies limiting the insurer's recovery to what it paid to the insured, nothing in the assignment contract here limited the rights inherited or the amount that could be recovered against Brandt. *See Bituminous Fire,* 437 N.E.2d at 1371 (insurance contract stating that "the assured does hereby subrogate to the insurer"). Given that the assignment contract provided for Landlord to purchase Best Buy's *entire* tort claim against Brandt, it is apparent to us that this was an assignment, not a subrogation.

Moreover, as pointed out by Landlord, if Brandt's position were adopted, the commercial utility of assignments would be destroyed. No one—e.g., collection agencies—would ever purchase an assignment and take on the additional cost and risk of litigation if the recovery was limited to the amount paid for the assignment. Brandt cites to no authority supporting the proposition that an assignee cannot recover the full value of the claim assigned, likely because such a proposition runs contrary to the very concept of assignments. Accordingly, we conclude that as Best Buy's assignee, Landlord is entitled to recover the full value of the claim regardless of the amount that it paid Best Buy for the assignment.

■ Finally, Brandt contends that in essence, Landlord and General Partner are the same interested party, and if they were to recover on both claims, it would be an impermissible double recovery for the same alleged wrong. *INS Investigations Bureau, Inc. v. Lee,* 784 N.E.2d 566, 576–77 (Ind.Ct.App.2003), *trans. denied.* Indiana law permits the pleading of alternative and inconsistent theories of recovery in the same case. *Foster v. Evergreen Healthcare, Inc.,* 716 N.E.2d 19 (Ind.Ct. App.1999), *trans. denied.* As a result, judgments on different claims may include the same element of damages. *Shelby Eng'g Co., Inc. v. Action Steel Supply, Inc.,* 707 N.E.2d 1026, 1028–29 (Ind.Ct. App.1999).

■ Landlord and General Partner concede that there cannot be two recoveries for the same wrong, but point out that this does not mean that there cannot be an entry of judgment against Brandt on both the negligence and contract claims in this case. They point to the well-established rule that double recovery is prevented at the execution of judgment stage. *Shelby,* 707 N.E.2d at 1028–29. Thus, if the plaintiff elects to execute on one judgment, then any other judgment containing the same damages is reduced to the extent of the overlap. *Id.* Landlord and General Partner admit, therefore, that if judgment is entered against Brandt on both counts, "both judgments will not be collectible in their entirety from Brandt to prevent double recovery." Reply Br. p. 12. We agree. We also note that Brandt's fear of double recovery does not in any way lend support to the jury's total damages finding of $57,000 on the negligence claim. Accordingly, we conclude that the jury improperly measured Landlord's damages

and the trial court should have granted Landlord's motion to correct error.

Indiana Appellate Rule 66(C)(4) permits us to order entry of judgment in an amount supported by the evidence. At trial, the only evidence introduced regarding the damaged property's fair market value, which, as noted above, is the correct measure of damages in this case, was in the amount of $86,874.45. The jury found Landlord to be 50% at fault, so the actual award to be received by Landlord is $43,437.23. Because the evidence supported only one amount as the total loss in fair market value, we may order judgment for Landlord as a matter of law in this undisputed amount, and hereby do so.

### 2. Prejudgment Interest

■■■ Landlord next contends that the trial court erred in failing to find that it should have been awarded prejudgment interest on its negligence claim. Specifically, Landlord argues that it should have been awarded prejudgment interest because the damages were ascertainable by a known standard—fair market value.

■■■ As we consider this argument, our review of the trial court's decision to deny prejudgment interest is for an abuse of discretion, focusing on the trial court's threshold determination of whether the facts satisfy the test for prejudgment interest. *Cincinnati Ins. Co. v. BACT Holdings, Inc.*, 723 N.E.2d 436, 440–41 (Ind.Ct.App.2000), *trans. denied.* Where the facts satisfy the test for prejudgment interest, the trial court has abused its discretion, and we will reverse its denial of prejudgment interest. *Id.*

■■■ Prejudgment interest is allowable when the damages are capable of being determined by reference to some known standard, such as fair market value. *4–D Buildings, Inc. v. Palmore,* 688

N.E.2d 918, 921 (Ind.Ct.App.1997). Indeed, when the prerequisites to the award have been met—i.e., a showing that the damages are ascertainable by reference to a known standard—then the award of prejudgment interest is mandatory and not discretionary. *INS Investigations Bureau,* 784 N.E.2d at 578.

Landlord contends that the trial court erred in failing to award prejudgment interest on the negligence claim because the damages were based upon fair market value, an ascertainable standard. Accordingly, Landlord argues that prejudgment interest is mandatory in this case.

Brandt responds by pointing to the statute codifying prejudgment interest awards in tort cases. According to Brandt, the following provision is fatal to Landlord's request for prejudgment interest:

This chapter does not apply if:

(1) within one (1) year after a claim is filed in the court, or any longer period determined by the court to be necessary upon a showing of good cause, the party who filed the claim fails to make a written offer of settlement to the party or parties against whom the claim is filed;

(2) the terms of the offer fail to provide for payment of the settlement offer within sixty (60) days after the offer is accepted; or

(3) the amount of the offer exceeds one and one-third (1 ⅓) of the amount of the judgment awarded.

Ind.Code § 34–51–4–6.

Landlord concedes that it made no such settlement offer as required by the statute, but claims that its failure to do so is not fatal to its claim for prejudgment interest. According to Landlord, the result is merely that the statute does not apply—and Landlord has never argued that it did. The statute does not mandate that if its

terms are not met, prejudgment interest may not be awarded at all, it merely removes the statutory remedy. Thus, Landlord asks us to base an award of prejudgment interest on common law.

We note that we engage in statutory construction only if the statutory language is ambiguous, or susceptible to more than one interpretation. *Ross v. Ind. State Bd. of Nursing,* 790 N.E.2d 110, 119 (Ind.Ct.App.2003). When construing a statute, our function is to determine and give effect to the legislative intent in enacting the provision. *Id.* The legislature is presumed to have intended the language used in the statute to be applied logically and not to bring about an unjust or absurd result. *Id.* We keep in mind the purposes of the statute as well as the effect and repercussions of the interpretation. *Id.* We will adopt an interpretation that fully implements the statute's provisions. *Id.* An important rule of statutory construction is that it is just as important to recognize what a statute does say as to recognize what it does not say. *Id.*

As we consider the Tort Prejudgment Interest Statute, we first acknowledge the language in its opening provision: "[t]his chapter applies to *any* civil action arising out of tortious conduct." I.C. § 34–51–4–1 (emphasis added). We next look to a relatively recent case in which we determined that "[t]he purpose of the Tort Prejudgment Interest Statute is to encourage settlement and to compensate the plaintiff for the lost time value of money." *Johnson v. Eldridge,* 799 N.E.2d 29, 33 (Ind.Ct.App.2003), *trans. denied.* In our view, in passing this statute the legislature intended to preempt common law prejudgment interest in tort cases. To hold otherwise would be to render the statute and its requirements virtually meaningless—a party who failed to fulfill the statute's requirements could merely turn to the common law for relief. Thus, to agree with Landlord is, essentially, to say that notwithstanding the statutory requirement that a tort plaintiff must make a qualifying settlement offer to recover prejudgment interest, we will allow plaintiffs who fail to do so to recover anyway. Such a result would be tantamount to decimating the statute altogether, which we shall not do. Accordingly, we conclude that the trial court properly denied Landlord's request for prejudgment interest.

### B. Contract Claim

In addition to the negligence claim brought by Landlord, General Partner brought a claim for breach of contract against Brandt. General Partner asserts that the trial court erred in denying its motions for judgment on the evidence and to correct error. Specifically, General Partner contends that the trial court should have held as a matter of law that Brandt had breached the Contract, only leaving for the jury the issue of Brandt's percentage of fault.

Among other things, the Contract provided that

[t]he Contractor shall indemnify and hold harmless the Owner and their agents and employees from and against all claims, damages, losses and expenses including attorneys' fees arising out of or resulting from the performance of the Work, provided that any such claim, damage, loss or expense (1) is attributable to ... injury or destruction of tangible property (other than the Work itself) including the loss of use therefrom, and (2) is caused in whole or in part by any negligent act or omission of the Contractor, any Subcontractor, anyone directly or indirectly employed by any of them or anyone for whose acts any of them may be liable, regardless of

whether or not it is caused in part by a party indemnified hereunder.

Appellant's App. p. 106. The following facts are not in dispute: Best Buy made an $86,874.45 claim for its damaged property in July 1996; Landlord or General Partner settled the claim on May 15, 1997, for $57,289.73; General Partner presented Brandt with a demand for indemnity based upon the above provision; Brandt refused to indemnify General Partner.

■ We note initially that Brandt makes no argument whatsoever with respect to General Partner's breach of contract claim.[6] It spends time in its brief discussing how various contractual provisions relate to Landlord's negligence claim, but never once mentions the Contract's indemnity provision or argues that the jury's verdict in its favor was proper. Accordingly, since Brandt presented no arguments in its brief against these assignments of error, we will review this issue for prima facie error. *Nat'l Oil & Gas, Inc. v. Gingrich,* 716 N.E.2d 491, 496 (Ind. Ct.App.1999).

Landlord directs us to *GKN Co. v. Starnes Trucking, Inc.,* 798 N.E.2d 548 (Ind.Ct.App.2003), in support of its argument. In *GKN,* the plaintiff brought an indemnity claim against the defendant based upon a contractual indemnity provision that is virtually identical to the one at issue here. *Id.* at 550. It was undisputed that the plaintiff had settled a claim within the scope of the indemnity provision. *Id.* at 550–51. We held that the defendant was required, as a matter of law, to indemnify the plaintiff, and reversed the trial court's grant of summary judgment in favor of the defendant. We remanded on

the sole issue of whether the defendant's negligence caused the damages on the underlying claim. We noted that "upon remand, [the plaintiff] need only prove that [the defendant's employee] was one percent at fault and [the defendant] will be required to indemnify [the plaintiff] ...." *Id.* at 556.

Similarly, in this case the Contract's indemnity provision clearly and unequivocally requires Brandt to indemnify General Partner for damage resulting from its own negligence. At the close of the evidence, all of the relevant facts relating to General Partner's breach of contract claim were established except for the issue of Brandt's negligence. Accordingly, the trial court erred in denying General Partner's motion for partial judgment on the evidence. In its verdict, the jury determined that Brandt was negligent in failing to cover the hole in Best Buy's roof. Therefore, although the jury found for Brandt on the contract claim, every element that General Partner needed to prove to prevail on that claim had been conclusively established. Consequently, the trial court erred in denying General Partner's motion to correct error.

## CONCLUSION

In sum, we find as follows: (1) the jury properly found for Landlord on its negligence claim; (2) the trial court erred in denying Landlord's motion to correct error as to the amount of the damages award; (3) the trial court properly denied Landlord's motion to correct error as to prejudgment interest; and (4) the trial court erred in denying General Partner's motion

---

**6.** Brandt contends that it did discuss this claim, but in fact, it only spends time discussing whether it had a contractual duty to cover the hole in the roof, not whether it had a contractual duty to indemnify General Part-

ner. Brandt does not seem to understand that General Partner's breach of contract claim related *only* to the indemnification provision.

for partial judgment on the evidence and motion to correct error.

The judgment of the trial court is affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion and with instructions to amend the judgment in favor of Landlord to be $43,437.23 together with interest from the date of the original judgment and costs.

KIRSCH, C.J., and BARNES, J., concur.